Jddge Simpson
delivered the opinion of the Court.
J. H. Daviess, by his last will, vested his whole es~ tate, real, personal and mixed, in John Rowan and Jas. Meáde and the survivors of them, and in such trustee as such survivor should appoint by deed or will; and if they died without making such appointment, then Samuel Daviess and Daniel Gross, or the survivor of them, were to be his trustees. The estate was vested in trust, that the trustees might pay the testator’s debts and comply fully with all his contracts. They were to appropriate a part of the estate for the support of the testator’s wife; and when the testator’s nephews, the sons of William Daviess, Samuel Daviess and John Daviess grew up, the trustees were to divide the estate into not more than three parts, and to give it to such of his nephews as they deemed most worthy. They were authorized to give the entire estate to one, if they thought proper to do so, or to two, but not to more than three at farthest. If the execution of the will should devolve upon Samuel Davis, his son was to have no share of the estate.
*395 After the death of the testator, the widow renounced the provisions of his will in her favor, and, claimed and received dower in the estate.
The testator died in 1811. Meade, one of the trustees, died in 1812. Rowan died in 1843; and Gross, one of the second set of trustees, died previous to Rowan. No disposition of the estate, at the time of Rowan’s death, had been made to any of the testator’s nephews. Nor had Rowan appointed a trustee to manage the estate, and consequently the execution of the trust devolved upon Samuel Daviess, the only surviving trustee named in the will.
In 1843, after Rowan’s death, Samuel Daviess, by deed duly executed, appointed one of the testator’s nephews, namely, Joseph Hamilton Daviess, son of John Daviess, sole devisee under the testator’s will, giving to him the whole estate, with full power and authority to take, occupy and enjoy it according to the provisions of the will. But the deed of appointment contains a condition by which the said J. H. Daviess is required, within four months from the date of the deed, to execute and deliver to Samuel Daviess a deed, in writing, releasing and discharging the heirs and legal representatives of John Rowan and James Meade, the former trustees and the sureties in their executorial bond, and their agents, Samuel Daviess and John Daviess, wTho had acted under said trustees, from all claim or demand or suits on the part of J. H. Daviess, the selected devisee, for or on account of any alleged defalcation or mal-administration of said estate, or for any other cause whatever.
In the assignment of dower to the widow she received several slaves, as her dower interest, in the slaves that belonged to the testator’s estate. In the year 1822 a judgment was confessed by Rowan for the sum of $726 68 in a suit previously brought against him as the executor of J. H. Daviess by Jacob Philips; and the execution that issued upon that judgment, being against Rowan as executor, and to be made of the assets in his hands, was levied upon the reversionary interest of *396 the dower slaves, which was sold under the execution in the year 1823, and purchased by Joseph Pollard, who had. previously married the widow, and then had the slaves in his possession in right of Ins wife.
Where a testator appoints a person to execute his will, conferring upon him the powers and lights which appertain to an executor, it amounts to a constructive appointment of such person to the office of executor, though he be styled a trustee: (1 Williams on Executors, 123.) Questions in the case.
The dower interest in the slaves ceased and determined in the year 1847 by the death of the widow. After her death this action of detinue was brought by J. H. Daviess, the appointee under the will, to recover the dower slaves against those claiming by virtue of the purchase of the reversionary interest at the sale'made under the execution by the Sheriff. Myers had the slaves in possession when the widow died, and the parties agreed that he should hold them merely as a stakeholder, and this suit should be brought against him for the purpose of trying the right, but he should not be liable for the costs, nor for the negroes.
The testator did not in his will nominate an executor in express terms. But as he confided to the persons whom he denominated trustees the execution of his will and conferred upon them the rights which appertain to an executor, it amounts to a constructive appointment of them to the office, and although called trustees by the testator, they were also his executors according to the tenor of his will: (1 William’s on Executors, 123.)
The plaintiff’s right of recovery in this action is contested mainly upon two grounds. First, that the deed of appointment under which he claims is invalid, inasmuch as it contains a condition intended to operate for the benefit of the trustee by whom it was executed, and upon the performance of which the vesting of the estate depends. And, furthermore, that the deed, if valid, did not invest the plaintiff with the legal title to the property, which still remained in the trustee after the execution of the deed.
Second, that the Sheriff’s sale under the execution against Rowan, as executor, transferred the reversionary interest in the slaves, after the termination of the dower estate, to the purchaser, and consequently the plaintiff has no title to them.
n me condition annexed to a cornevante be "passed ,ho."Sl> ,||B co"; peiformed — so if the condition be inegai.
.... . , , Where a testator devised _ the. taie to trustees," renounced™^ provision made for hex by the-will, and had dower assigned in slaves .which were embraced by the will: Held that the trastees were only divested of title to the extent of the dower interest, & the reversion remained in the ®¿e“sdlia-
1. The objection to the appointment of the plaintiff as devisee, is (bunded on a misconception of the nature of the condition contained in the deed by which he is , . , . . i i i -n designated as the person who is to ,take under the will, It is not a precedent condition that must be performed before the estate vests, but a condition subsequent, the performance of which is not. essential to the vesting of , t,- . ,. , , , , ^ . the estate. It the condition be illegal, it does not vitiate the deed of appointment, or defeat the estate which it confers, although the condition itself may be void and inoperative. And as the deed designates the plaintiff as the person who is to take under the will, and invests him with all the rights of a devisee, with power and authority as such, to take, occupy and enjoy the estate according to the provisions of the will, the title to the slaves which belonged to the estate vested in him, nothing more being necessary to the completion of his title, after his appointment as devisee, than the assent of the trustee and executor, that he should take the slaves and hold them in that character.
2. The effect of the Sheriff’s sale depends upon the question whether the reversionary interest in the dower slaves remained in Rowan, as trustee and executor, at the time of the sale, and whether such an interest in the slaves'was assets in his hands and liable to sale by execution?
The will vested the title to the whole of the testator’s estate in the trustees. The renunciation of the will by the widow and the assignment of dower to her, only operated to divest the title of the trustees to the extent of the interest which the law conferred upon her in the property comprised in her dower estate. The title to the life estate in the slaves was, by operation of law, vested in the widow. The title' to the estate, in reversion, remained in the trustees by virtue of the provisions of the will. It could not vest in the devisee, because no person had been selected to take in that, character. Although, by the assent of the executor that the widow should hold the slaves in dower, his title was divested during the continuance of her life- *398 estate, and to that extent the slaves were not assets in his hands; yet as that assent did not either expressly or by construction vest the reversionary interest in any other person, the entire title did not pass out of him. In this respect, this case differs from that of Anderson vs Irvine, (6 B. Monroe, 231.) There the administrator, by permitting the widow to take the slaves in dower, was considered as having surrendered them to her and the heirs, and thereby divested himself of all title to them. Here the surrender to the widow could not have that effect, because no assent by the executors could be implied that the heirs should take the reversionary title, inasmuch as they had no right to the slaves; and as the executors were the only devisees until others were appointed by them, the title, except so far as it was divested by the widow’s life estate, remained in them, there being no other person in whom it could vest.
Slaves devised to executors in trust to be given to suclx other persons partially designated as the trustee should select, remain with the trustee until disposed of according to the trust, and liable to execution upon judgment against the trustee as executor.
The title to the slaves and personal estate would, by operation of law, have vested in the executoro even if the testator had not expressly devised his estate to them. ’ Their title to that part of the estate under the will, was precisely the same that they would have had if there had been no devise of it to them. It was, therefore, liable to be taken and sold under executions against them as executors. It was assets in their hands and remained such until its character was changed by alienation, or some other act which produced a similar effect.
The surrender of the slaves to the widow in dower changed the character of the property to the extent of her interest in it, because that far the title to it had been given up by the executors. But it still continued to be [assets in their hands, so far as the title remained in them, and as such was liable to sale under execution.
■ It is contended, that a sale of the reversionary interest in slaves, under such circumstances, should not be sanctioned, it being against the policy of the law, and injurious to the rights of the reversionary proprietors. It is no doubt the duty of an executor to apply the as *399 sets in his hands to the payment of the testator’s debts, and a surrender by him to the widow or devisee of any part of the assetts until the debts have been paid, is a breach of that duty, for which he might be held responsible by either a creditor or any other person interested, who had been injured by the act. But still a creditor has a right to sell the title to the reversion, which being in the executor, is assets in his hands and liable to execution. The fact that the creditor has a remedy against the executor for a devastavit, does not deprive him of his light to sell the assets still remaining in the hands of an executor, and thus avail himself of that remedy which is most speedy and direct.-
That an executor may lay himself liable lor a devastavit in not properly administering:, will not affect the right of a pnrchaserof property sold to pay debts which is liable.
The slaves were levied upon, and the reversionary interest in each one sold separately. There does not seem to be any objection made to the manner in which the sale was effected. The title in reversion passed to the purchaser by the sale. Whether that title, acquired under the circumstances it was, by the husband of the widow, and apparently for her benefit, should be deemed to be held in trust for the plaintiff, is a question of equitable cognizance that does not arise in this action at law, and the solution of which may depend not only upon the relative attitude of the parties, but also upon the liability of the widow to have paid the judgment at law against the executor, to satisfy which the sale was made, if such a liability existed in consequence of her having the estate in her hands that should have been applied to its payment, and which instead of retaining, she ought to have surrendered to the executor for that purpose. But whether such a liability existed or not, or its effect upon the sale if it did exist, are matters not now before the Court for adjudication, and: about which, therefore, no opinion is now expressed.
It is unnecessary to notice the minor points made in reference to the admissibility of testimony, as the judgment will have to be reversed on the ground that the instructions by the Court below to the jury, upon the subject of the sale of the slaves under execution, were not in accordance with the principles ' of this opinion,' *400 and the same questions, in all probability, will not rise upon a future trial.
Fry Sf Page for plaintiff; Loughborough Ballard for defendant.
Wherefore, the judgment is reversed, and cause remanded for a new trial, and further proceedings in conformity with this opinion.