## JAMES M. MORRISON, Trustee for HARRY MORRISON et al., Appellant, v. HARRY T. ROEHL et al.

### Division One, December 23, 1908.

1. **NOTES: Payment or Assignment: Release of Deed of Trust.** Where the payee and holder of notes secured by a deed of trust, in his lifetime, wrote on the back of said notes that for value received he thereby assigned them without recourse to the maker's widow, and signed his name thereto, and the trustee in the deed of trust testified that the payee's signature thereon was his genuine signature, and the evidence shows that at a sale under the deed of trust the widow became the purchaser, the finding of the trial court that the notes were not paid off but purchased by the deceased wife, will not on appeal be disturbed, notwithstanding the fact that thereafter the executor of the payee released the deed of trust on the record, and the trustee testified that in his opinion the notes had been paid but had no personal knowledge of the payment.

2. **————: Assignment: Subsequent Release.** If the payee of the notes assigned them in his lifetime to the maker's widow,

Morrison v. Roehl.

then the payee's executor had no authority after the payee's death to release the lien of the deed of trust securing their payment. The assignment of the notes carried with it the deed of trust, and all control over the deed of trust by the payee or his executor was thereafter lost, and any attempted release by either was void.

3. LIMITATIONS: Deed of Trust: Act of 1891. The Act of 1891, requiring suits or proceedings to foreclose an existing mortgage which secured a debt itself barred, to be begun or had within two years, applies only to those mortgages or deeds of trust whose debts were barred at the time of the passage of the act. So that where the deed of trust was dated April 1, 1880, and was given to secure three notes payable in one, two and three years, the last becoming due on April 1, 1883, the Act of 1891 did not prevent the foreclosure of the deed of trust on August 12, 1893, for at the time of the passage of the act in 1891 at least two of the notes were not then barred.

4. DEED OF TRUST: Purchase By Life Tenant: Contribution. Where the mortgaged premises were a homestead, and after the maker of the notes died, his widow purchased them and at a foreclosure sale bought in the homestead and received a deed therefor, she in law purchased for the benefit of herself and her heirs, the remaindermen, subject to their right to enjoy the benefits of such purchase by contributing their share of the purchase price. But they cannot share in the purchase until they do make contribution. The life tenant's purchase and deed are not void.

5. ———: ———: ———: Theory at Trial. Where after the purchase of the homestead by the homesteader's widow under the deed of trust, she died, leaving a will by which she devised the property to one of her children, and plaintiff brought suit on the theory that the mortgage debt had been paid and not the notes purchased by her, and that therefore the title descended to the mortgagor's heirs and that he had at execution sale bought the share of one such heir and was entitled to partition, but neither he nor the remainderman whose interest he bought had ever offered to contribute his share of the purchase price, plaintiff will not be heard to contend on appeal that contribution is a privilege of the heir, since he tried the case below on the theory that the widow had paid the notes and thereby extinguished the deed of trust.

Appeal from Cape Girardeau Court of Common Pleas. —*Hon. Benj. F. Davis,* Judge.

AFFIRMED.

*M. A. Dempsey* for appellant.

(1)  Mrs. Roehl, at the time of the sale by the trustee, was in possession of the premises as tenant for life. She had a dower and homestead interest. Raymond E. Roehl, to whose interest plaintiff has succeeded, was a minor until after the death of the mother, lived with her upon the premises continuously, and as an heir of his father, Julius Roehl, had a vested interest in remainder. Under the circumstances the attempted purchase of absolute title, as an effort to cut off and destroy the remainder, was a breach of the trust relation existing between the life tenant and those entitled to the remainder and was absolutely ineffectual. Such is the law as between tenants in common and life tenants and remaindermen, who are of legal age, have separate and diverse interests, and have legal capacity to manage their own affairs. Pecot v. Page, 26 Mo. 416; Dillinger v. Kelly, 84 Mo. 568; Jones v. Stanton, 11 Mo. 433; Hickman v. Link, 97 Mo. 482; Van Horne v. Fonda, 5 John. Ch. 406; Glass v. Waterhouse, 61 S. W. 450; Fiels v. Bank, 22 Ky. L. R. 1708; Brown v. Hoyle, 30 Ill. 119; Patrick v. Sherwood, 4 Blatchf. 112. For greater reasons the sale here was invalid. Maria Roehl was the natural guardian of Raymond Roehl; his age at the time of the sale, fourteen years, necessitated absolute trust and confidence in her management and care of his property interests. (2)  All the circumstances indicate that the indebtedness was treated as paid. More than ten years after the notes had matured Maria Roehl suddenly assumed a position antagonistic to her minor children and attempted by a colorable sale to divest them of their inheritance. (3)  If there ever was a case within the true spirit of the Statute of Limitations this one is. After the other parties who have knowledge of the original transaction are all dead, the principle of estoppel, which is the underlying principle of statutes

of limitations should intervene and of itself render null and void the attempt to obtain adverse title by foreclosure. After more than ten years have elapsed since the maturity of the indebtedness and by solemn declarations of record it is treated as paid.

*R. G. Ranney* for respondents.

(1) The rule that one cotenant cannot purchase an outstanding title and assert it against his cotenants does not apply in this case. Maria Roehl was not a cotenant with the heirs of Julius Roehl, but was entitled to the entire control of the property as a homestead. Freeman on Cotenancy & Partition, sec. 52; Martin v. Castle, 91 S. W. 930. (2) But a cotenant has the right to buy the interest of the other cotenants at public sale. Peck v. Lockridge, 97 Mo. 559; Freeman on Cotenancy & Part., sec. 165. (3) And if Mrs. Roehl should be considered a joint tenant she had the right to buy under the deed of trust to protect her homestead. Ailey v. Burnett, 134 Mo. 313; Smith v. Stephens, 164 Mo. 415; Burrough v. Howell County, 79 S. W. 682. (4) The purchase made by a cotenant of an outstanding title or incumbrance is not void, nor does the interest so acquired by him, or any part of it, by operation of law, vest in his cotenants. Freeman on Cotenancy & Part., sec. 156. (5) It follows, therefore, that any interest in the property which appellant's grantors may have inherited from their father, Julius Roehl, was foreclosed and sold under the deed of trust. The whole title became vested in Mrs. Roehl by virtue of the trustee's deed, and no part of it vested in the children. Meads v. Hutchinson, 111 Mo. 620; Cockrill v. Hutchinson, 135 Mo. 67. (6) The only right they had left, if any at all, was a mere equitable right to demand from her an interest in the property, upon payment to her of their proportionate part of the incumbrance which she had purchased. But this was a mere personal privilege which they could exer-

cise or not as they saw proper. Brant v. Robertson, 16 Mo. 129; Allan v. De Groodt, 105 Mo. 442. (7) But at the time of the sales under the executions against Raymond E. and Charles F. Roehl they had not chosen to exercise that privilege, nor have they since done so; and having failed to pay to her the money necessary to give vitality to their equitable claim, they had no such interest in the land as could be sold under execution. Brant v. Robertson, 16 Mo. 129; Quell v. Hamlon, 81 Mo. 441; McIlvaine v. Smith, 42 Mo. 45; Bartlett v. Glascock, 4 Mo. 62. This personal privilege might be compared to the right of a pre-emptor to accept. Bray v. Ragsdale, 53 Mo. 170.

GRAVES, J.—The facts shown and matters pleaded can be well stated together in this case.

In September, 1883, Julius Roehl, who was then the owner of the real estate in dispute, died. This property was his homestead and was acquired in 1874. Upon this homestead, he, being joined therein by his wife Maria, had placed a deed of trust of date April 1, 1880, to secure the payment of three several notes of the sum of $226.10 each, bearing interest at ten per cent compound interest, and payable in one, two and three years. No administration was had upon his estate, but the probate court of Cape Girardeau county, said county being the *situs* of this property and the birthplace of this suit, made an order refusing to grant letters of administration. The notes secured by this deed of trust were payable to John P. Hitt. A disputed matter in the case is as to whether or not these notes were paid, or whether they were purchased by the widow. The defendant Powers claims that the widow purchased these notes, and they were assigned to her by John P. Hitt in his life time. This purchase as alleged was in November, 1883. The contention on the other side is that they were paid, and that thereafter, in 1891, one Albert as executor of John P. Hitt

undertook and did release said deed of trust by a quit-claim deed to the heirs of Julius Roehl. The notes, with an assignment from John P. Hitt without recourse to Maria Roehl, of date November 19, 1883, were in evidence. The Albert deed was of date March 14, 1891, and purports to release the deed of trust. Later in 1893, Robert L. Wilson, the trustee in the deed of trust, at the request of Maria Roehl or her attorney, advertis-ed and sold the premises for $2,000, the purchaser be-ing Mrs. Roehl. The commission of the trustee and the expenses of sale were paid, and the notes credited with the remainder. Mrs. Roehl died in 1896, one of her seven children, Chester, having previously died. Prior to her death she executed a will which among other things provided: "Second, I give, devise and bequeath to my youngest child, Mary Eloise Roehl, my residence property, being Lots number one and twelve in Range "H" in the city of Cape Girardeau, county of Cape Girardeau and State of Missouri, together with all the furniture of every kind in said residence, to have and to hold the same until her marriage; and after her marriage, or if she should never marry, then after her natural death, I give, devise and bequeath the same in fee to said Thomas Powers, as executor and trustee, in trust, for the use and benefit of all of my six children, to-wit: Harry T., Charles F., Raymond E., Arthur B., and Mary Eloise Roehl and Geraldine Roehl Isaacs, and I authorize, empower and direct said executor and trustee to sell the same at either private or public sale, and make conveyances thereof as fully as I could do, if living, and to divide the net proceeds thereof equally, share and share alike, among my said six children."

The plaintiff, as trustee for other parties named in the deed, is a purchaser at an execution sale of whatever interest, if any, was held by Raymond E. Roehl, on May 7, 1901, the date of sale, and defendant Davis claims through a similar sale of the alleged inter-

est of Charles F. Roehl.  Defendant Anderson is the tenant in possession under Powers as landlord.  The other defendants are the children of Julius Roehl, except defendant, Isaacs, who is merely the husband of one of the daughters.

Plaintiff, by the petition, asks in the first count that the court ascertain and define the title of the parties to the property involved, and in the second count for a partition of the premises.  The petition, among other things, proceeds on the theory that the sale under the deed of trust was void, because of the debt having been previously paid.  The answer in detail pleads the facts as contended for by Powers, to the effect that there was a valid sale under the deed of trust.  This issue is sharply drawn in the evidence.  The court entered judgment thus:

"The court, having been duly advised of and concerning the matters and things in issue herein, finds that Maria J. Roehl at the time of her death was the owner in fee of the real estate described in plaintiff's petition; that she had the right to and did devise the same to Thomas Powers in trust to Eloise Roehl, her daughter, and that the said Thomas Powers is now rightfully in possession of said premises.

"It is therefore considered, adjudged and decreed by the court that plaintiff's bill be dismissed and that he take nothing by his writ, and that the defendants recover of the plaintiff their costs in this behalf expended and have thereof execution."

From this judgment plaintiff appeals, but defendant Davis, although claiming an interest in the land in his answer, abided the judgment of the court. Such are the facts of this case.

I.    There is a sharp conflict of the testimony on the question as to whether or not the notes were paid off or purchased.  Robert L. Wilson, who was trustee in the deed of trust, and afterward attorney for

Albert, the executor of John P. Hitt, was of the opinion that the notes had been paid, but when pressed on cross-examination seemed to have no personal knowledge of the payment. There are also some bits of testimony tending to show that the foreclosure of the deed of trust was had because of friction between Mrs. Roehl and some of her children. Mrs. Roehl seems to have been a very practical and successful business woman, and left considerable estate. Judge Wilson examined the signature of John P. Hitt to the several assignments on the notes, and pronounced it the genuine signature of John P. Hitt. The assignments are all identical and one will suffice. The language used, is:

"For value received, I herewith assign the within note to Mrs. Maria Roehl, without recourse, this 19th day of November, 1883.

"JOHN P. HITT."

The purported quitclaim deed with release clause, from Albert to the heirs of Julius Roehl, recites that the debt was fully paid to Hitt in his lifetime. There is no showing that Mrs. Roehl had anything to do with this deed, nor is there any showing to whom or when it was delivered. This deed was made in 1891, some two years prior to the sale under the deed of trust. So that, opposed to the vague testimony of Judge Wilson as to payment and the purported deed of release, we have the assignment of these notes by Hitt in his lifetime to Mrs. Roehl. Under this condition of the proof, the trial court was fully justified in finding that there had been a purchase of the outstanding mortgage indebtedness rather than a payment. The finding of the court upon this point will not be disturbed.

II.   If John P. Hitt in his life time executed the assignments of the notes hereinabove indicated in 1883, then there was no power or authority in his ex-

ecutor to make this deed of release in 1891. The assignment of the notes carried with them the deed of trust, and all control of the deed of trust was thereafter lost, both as to Hitt and his personal representative, the executor. [Borgess Investment Co. v. Vette, 142 Mo. l. c. 574, and cases cited.]

Such instrument was void. So that this part of the case merely turns upon the question discussed in the preceding paragraph, i. e., was there a sale or payment of the indebtedness? If a sale as indicated by the written assignment, then the deed of release is void. If a payment, the question would be different. It is hardly probable, however, that a shrewd business woman, as Mrs. Roehl was shown to have been, would be more apt to pay a debt of her husband than to purchase the same, in a case where she secured the same protection of her homestead and dower rights by either course. Business sagacity would have suggested a purchase when the money was coming from her. The husband had left no estate out of which she could pay, as shown by the probate record.

III. Another contention is that the sale under the deed of trust was void, because the debt was barred by the Statute of Limitations. The sections of statute relied upon are Revised Statutes 1899, sections 4276 and 4277, which are as follows:

"Section 4276. *No action to foreclose mortgage after note barred.* No suit, action or proceeding under power of sale to foreclose any mortgage or deed of trust, executed hereafter to secure any obligation to pay money or property, shall be had or maintained after such obligation has been barred by the Statutes of Limitations of this State.

"Section 4277. *Mortgage notes executed prior to 1891 barred, when.* Nor shall any such suit be had or maintained to foreclose any such mortgage or deed of trust heretofore executed to secure any such obliga-

tion after the expiration of two years after the passage of this act.''

These two sections have their origin in the Act of the General Assembly, approved February 18, 1891, and first went into effect June 22, 1891. The notes and deed of trust were given some eleven years before the passage of this act, i. e., April 1, 1880. The last note became due April 1, 1883. The trustee's sale was had August 12, 1893, some four months more than ten years after the last note became due. It will be noticed also that the sale was not within two years from the date the Act of 1891 became effective. All these notes were more than ten years past due at this sale, and the notes themselves were barred by the Statute of Limitation, but was the right to foreclose under the deed of trust barred by reason of the statute aforesaid? Prior to these statutes the deed of trust was not barred within twenty years. [Lewis v. Schwenn, 93 Mo. 26; Long v. Long, 141 Mo. l. c. 368; Bumgardner v. Wealand, 197 Mo. l. c. 436.]

None of these notes were barred when the act was passed, February 18, 1891. It is true that one note became barred prior to the time the act took effect, June 22, 1891, but the other two notes were not barred at either date.

In Bumgardner v. Wealand, supra, we said: ''We think it was the purpose of the General Assembly to provide that all deeds of trust and mortgages executed after the act of 1891 (now sections 4276 and 4277, R. S. 1899) should continue in force only so long as the debts they were given to secure were not barred by the Statute of Limitations, and to repeal the right to enforce them for twenty years and after the obligations they secured were barred, as had been repeatedly held before the enactment of 1891. [Lewis v. Schwenn, 93 Mo. 26; Long v. Long, 141 Mo. l. c. 368.] But the Legislature obviously intended this legislation to be prospective in its operation and carefully pro-

vided that it should take effect after the passage of the act. It was also in the mind of the Legislature that there were doubtless many deeds of trust and mortgages which had been given to secure debts which were barred by the Statute of Limitations, but which were nevertheless enforceable, and accordingly it was determined to shorten the period of limitations as to such deeds of trust and mortgages by providing they should not be foreclosed after the expiration of two years after the passage of the act. We think to apply it to obligations which had been executed prior to the act and which would be barred within two years after the act went into effect would be to import into the act a contingency for which the Legislature made no provision, and this, of course, we cannot do. If the act is not to be held applicable to those mortgages and deeds of trust only in which the debts were barred at the time of the passage of the act, then it would result that those mortgages whose debts were barred when the act was passed would have two years in which to foreclose, but a creditor whose debt might be barred only a month or a day even before the two years after the passage of the Act of 1891 expired, would only have the fraction of that two years left in which to foreclose. We do not think such a result was in the mind of the Legislature. We think the act was applicable only to those whose debts, secured by mortgages or deeds of trust, were barred when the act was passed.'' [See, also, the recent case of Stockton v. Teasdale, 212 Mo. 611, wherein LAMM, J., cites all of our cases.]

From this holding at least two of these notes had life sufficient to support the foreclosure sale, and it is unnecessary to discuss the situation of the first maturing note. The point that the deed of trust was barred is therefore ruled against appellant.

IV. It is next contended that Mrs. Roehl was merely the holder of a life estate, and that she could not purchase an outstanding title to defeat the remainderman. It is true that she held such an estate by way of her homestead and dower rights, but does it follow that she cannot protect such an estate by the purchase of an outstanding title? The general rule is that when a cotenant purchases an outstanding title, said purchase is presumed to be for the benefit of all the parties in interest. The same rule is applied to the case of a life tenant and a remainderman. [Allen v. DeGroodt, 105 Mo. l. c. 452.]

The purchase is not void, but the title passes to the cotenant or life-tenant, subject to the rights of the other cotenants or remaindermen, as in this case, to come in and contribute their share of the purchase price, and thereby secure their interest in the estate. In the case last cited we said:

"It is a general rule that a tenant in common cannot purchase an outstanding title or incumbrance on the common property, and then set it up as against his cotenants. Such a purchase will be deemed to have been made for all, if they shall consent to pay their proper share. [Jones v. Stanton, 11 Mo. 433; Barnes v. Boardman, 9 L. R. A. 571, and notes.] And these rules apply as between a tenant for life in possession and a remainderman, so that a purchase of an incumbrance on the common property by a tenant for life in possession will be deemed to have been made for the benefit of himself and those in remainder, if the remaindermen see fit to pay their share. [Holridge v. Gillespie, 2 John. Ch. 29; Whitney v. Salter, 36 Minn. 105; Myers v. Daviess, 10 B. Mon. 394; 1 Wash. Real Prop. (5 Ed.), 129; Bowling's Heirs v. Dobyns' Admr., 5 Dana 446.]

"But the purchase of an outstanding title or incumbrance by a cotenant is not void (Freeman, Cotenancy & Part., sec. 156), and Washburn says, 'If a

tenant for life purchase an outstanding incumbrance upon the estate it is regarded as having been done for the benefit of the reversioner as well as himself, if the latter will contribute his proportion of the sum paid therefor.'

"It is, therefore, clear that when Marshall S. Allen purchased the property at the trustee's sale he obtained the full title, but he held it subject to the right of the remaindermen to come in and obtain the benefit of the purchase by contributing their share of the purchase price. Thus far the plaintiffs have never signified their desire to redeem, and this probably for the reason that for many years the incumbrance equaled, if not exceeded, the value of the land. The life-tenant and those claiming under him are in possession, and it is just and equitable that the remaindermen should redeem by paying their proper share of the incumbrance before they are allowed to recover in ejectment."

The plaintiff (appellant) in this case claims the interest of one of the remaindermen. There is no evidence of an offer to contribute and repay to Mrs. Roehl the share of this remainderman for the purchase of the outstanding title. Years have elapsed and neither the remainderman nor his purchaser, this plaintiff, has ever offered to make good the proportionate part of the price paid for the incumbrance, which was an outstanding title. Respondent urges that this matter of contribution is a personal privilege and could only be exercised by the remainderman. This question it is not necessary to discuss, for the plaintiff has proceeded upon the theory that the conveyance was void, and has made no offer of contribution. Upon that theory the case must proceed here. It follows that the deed to Mrs. Roehl made by the trustee is not void, but passed the fee to her, and until contribution was made, neither the remaindermen nor their grantees can attack the title thus conveyed.

V.  It is not seriously urged that the provisions of the will made by Mrs. Roehl are not sufficient to pass title to Thomas Powers, as trustee. Not being urged we will not discuss the provisions of the will. From what has been said it follows that the judgment of the trial court is right, and the same is affirmed. All concur.