OLLIE C. SOUDERS, Defendant in Error, v. CLARA KITCHENS and MARY JOST, Plaintiffs in Error.—124 S. W. (2d) 1137.

Division One, February 8, 1939.

*Edw. D. Summers* for plaintiffs in error.

*G. C. Beckman* for defendant in error.

BRADLEY, C.—This is an action to determine title to 80 acres of land in Crawford County. Plaintiffs in error were defendants below, and defendant in error was plaintiff. We shall refer to the parties as styled below.

The trial court sustained a demurrer to defendants' answer, and rendered judgment in favor of Ollie C. Souders, plaintiff below. The judgment recites that plaintiff was the fee owner of the land, and that defendants had no interest therein. The cause was brought to this court by writ of error.

Plaintiff (Souders) alleged that he was the fee simple owner; that he was informed and believed that defendants claimed some interest in the land; that if defendants or either of them had any interest in the land, such arose from the fact "that Louisa E. Souders, the mother of the two defendants (Clara Kitchens and Mary Jost) became the owner of the land" under the will of Sarah E. Tyree, which will was probated in Crawford County on August 26, 1886. Plaintiff further alleged that on November 15, 1886, Louisa E. Souders and her husband, Jacob L. Souders, "made, executed, and delivered to Ed Simpson, trustee for Martha Gibson, a certain deed of trust (on the land) in the sum of $350;" that on February 26, 1892, Louisa E.

Souders died intestate, "leaving as her only heirs the said Jacob L. Souders, her husband, and Clara Kitchens and Mary Jost, daughters, at that time minors;" that on March 31, 1893, more than 9 months after the death of Louisa E. Souders, the deed of trust "was properly foreclosed;" that at the sale Harry Clymer was the purchaser "for the sum of $470;" that on the same day, March 31, 1893, Harry Clymer conveyed (consideration not shown) the land to Jacob L. Souders.

Plaintiff alleged that his title derives from the "title acquired by the said Jacob L. Souders" under the deed from Clymer, and that defendants have no interest in the land "because of the fact that the said trustee's sale to Harry Clymer and the subsequent warranty deed from Harry Clymer to Jacob L. Souders were made in good faith and for a valuable and sufficient consideration; and for the further reason that any claim that the defendants or either of them might have is now barred by the Statutes of Limitations;" that he and those under whom he claims have been in adverse possession "for the past forty-two years and have paid all legal taxes thereon for and during all that time."

It is alleged in the answer that Louisa E. Souders owned the land in fee; that she died intestate February 26, 1892, leaving as her only heirs defendants and her husband Jacob L. Souders; that prior to her death, Louisa E. Souders executed the deed of trust to Simpson, trustee, "to secure the payment of a certain promissory note made and executed by Jacob L. Souders and said Louisa E. Souders;" that the deed of trust was foreclosed after the death of Louisa E. Souders, and that Harry Clymer was the purchaser at the sale; "that at the same time the said Harry Clymer conveyed said property by warranty deed back unto the said Jacob L. Souders and that said sale was wholly fraudulent and void and was executed for the purpose of divesting these defendants of their interest in and to said real estate;" that defendants (Clara and Mary) were at the time respectively 6 and 7 years of age.

Defendants further alleged that plaintiff has not held the land adversely to them for the reason that they "had no knowledge" of any interest in the land until service of process upon them; "that they were ignorant of the fact that the said Louisa E. Souders, deceased, was seized of any real estate at the time of her death."

The demurrer to the answer was general, alleging that the answer "does not allege any facts which constitute any defense to this cause of action."

 "An estate by the curtesy is the life estate of the husband in all the lands and tenements of the wife, of which she was seized of a freehold estate of inheritance at any time during coverture; the curtesy becoming initiate upon the birth of issue, born alive and capable of inheriting the estate, and consummate, or taking effect in

possession, upon the death of the wife.'' [Teideman on Real Property (4 Ed.), sec. 75.] Prior to 1921 (Laws 1921, p. 119; Sec. 319, R. S. 1929) the estate by the curtesy existed in this State. Clara Kitchens and Mary Jost, were Clara and Mary Souders and were the children of Louisa E. and Jacob L. Souders. Such being so, then upon the death of Louisa E. Souders on February 26, 1892, her husband, Jacob L. Souders, became a tenant (for life) by the curtesy of the land in question and the remainder in fee was in Clara and Mary.

It does not appear on what theory the trial court proceeded in sustaining the demurrer to the answer of defendants, and rendering judgment for plaintiff, but plaintiff contends that defendants were, in any event, barred by limitations. We proceed on the theory that Jacob L. Souders was, in legal effect, the purchaser at the foreclosure sale (March 31, 1893), and not Clymer. [Peak et al. v. Peak et al., 228 Mo. 536, 128 S. W. 981.] At the time of this sale Jacob L. Souders was the life tenant of the land, hence his purchase at the sale, had the foreclosure not been due to his failure to pay his own debt, would ''be deemed to have been made for the benefit of himself and the remaindermen (defendants) if the latter had seen fit to pay their share of the purchase money within a reasonable length of time thereafter.'' [Cockrill v. Hutchinson, 135 Mo. 67, l. c. 73, 74, 36 S. W. 375, and cases there cited.] But the rule requiring the remaindermen ''to pay their share of the purchase money within a reasonable time,'' should have no application when the foreclosure is due to the failure of the life tenant to pay his own obligation, because in such case there is no duty cast upon the remaindermen to make any contribution to proportionately reimburse the life tenant. It will be noted that the deed of trust secured an obligation of $350, and that the foreclosure sale price was $470. In this situation there is no inference that Jacob L. Souders paid out any greater sum than he actually owed.

But will the fact that the remaindermen were under no obligation to make proportionate contribution to Jacob L. Souders, affect the question of limitations? This question, of course, depends on the kind of action, if any, defendants had at the time of foreclosure. The Cockrill case, supra, was to redeem from a mortgage sale, and the facts were these: June 3, 1872, Houston McFarland and Sue B. McFarland were husband and wife and had two children, Mary and Maggie, 14 and 16 years of age. On that day Sue B. borrowed $450 from John E. McFarland, for which she executed her note due in 3 years. June 25, 1872, Sue B. purchased from Rounds the land in question in that case, and received deed. June 28, 1872, Sue B., her husband joining, executed a mortgage on the land to John E. McFarland to secure the payment of the $450 note. March 8, 1877, Sue B. died, leaving her husband and the two daughters. June 13, 1878, John E. McFarland foreclosed his mortgage, and

Houston McFarland, surviving husband of Sue B., became the purchaser at the foreclosure sale. September 6, 1879, Houston McFarland conveyed the land to Hazen, and on February 15, 1887, Hazen conveyed to Hutchison, defendant in Cockrill v. Hutchinson.

Houston McFarland, upon the death of his wife, Sue B., became a tenant by the curtesy, and the remainder in fee vested in the two daughters, but upon the husband's purchase at the foreclosure (June 13, 1878) "the legal title to the land" passed to him "at which time the cause of action of plaintiff and her sister, Maggie, accrued." [Cockrill v. Hutchinson, 135 Mo. l. c. 75, 36 S. W. 377.] At the time of the foreclosure in the Cockrill case, the remaindermen were 20 and 22 years of age, but no suit was filed until the lapse of 14 years. In ruling the Cockrill case the court said (135 Mo. l. c. 76, 36 S. W. 377):

"After plaintiff has for so long slept upon her rights, without any manifestation of a desire to share the burdens of the purchase by her father at the mortgagee's sale, and thereby avail herself of its possible benefits, until the property has been improved and greatly enhanced in value, it would be inequitable to now permit her to do so."

It will be noted that in the Cockrill case it was not the failure of the husband, as was the situation in the present case, to pay *his own* obligation that brought about the foreclosure, hence in that case there was a duty upon the remaindermen to proportionately contribute their just share to reimburse the father for the sum he expended to purchase at the foreclosure sale. As pointed out, supra, no such duty rested upon the remaindermen in the present case. The question of apportionment of amount paid by life tenant or remaindermen to discharge liens, arises only when the liens were created by persons other than the life tenant or remaindermen. [1 Washburn on Real Property (6 Ed.), sec. 239.] 1 Washburn on Real Property (6 Ed.), sections 240, 241, discusses the rule of apportionment of contribution, but that subject is not concerned here. In the situation here it must be held that notwithstanding the purchase by Jacob L. Souders at the foreclosure sale, he did not acquire for himself any estate in addition to what he already had, viz., a life estate as tenant by the curtesy. "The possession of a tenant for life is never deemed to be adverse to his reversioner. Nor, if he be disseised, are the rights of the reversioner thereby affected, and he may enter or sue to recover possession within the period of limitations after the death of the tenant for life, without regard to the lapse of time during which the disseisor may have held the premises." [1 Washburn on Real Property (6 Ed.), sec. 244.]

Herndon et al. v. Yates et al. (Mo.), 194 S. W. 46, was to determine title, and was somewhat similar to the present case. There "almost 40 years" had elapsed during which time adverse possession was claimed. The ten and thirty-year statutes were relied upon. In ruling

the contention that the action was barred by limitations the court said:

"Defendants insist that the Statutes of Limitations bar recovery; relying, it seems, upon both the 10-year statute and the 30-year statute for this position. Both the time and sort of possession meet for a foundation for the running of these statutes were shown, we may concede for argument's sake; but learned counsel in urging the applicability of these statutes overlook the fact that the plaintiffs are remaindermen, and that Lutes, who holds the life estate, is yet alive, and therefore, since his life estate has not yet fallen in, plaintiffs were not compellable to bring this action till he died. . . . The Statute of Limitations could not begin to run against plaintiffs till they became entitled to the possession of the land in dispute. This right to possession being postponed by the protecting life estate they were not barred here," citing Bradley v. Goff, 243 Mo. 95, 147 S. W. 1012; Hauser v. Murray, 256 Mo. 58, 165 S. W. 376; Armor v. Frey, 253 Mo. 447, 161 S. W. 829.

It does not appear from what is here whether Jacob L. Souders is yet living. If he is, then Ollie C. Souders is entitled to the possession until the death of Jacob L. Souders. If Jacob L. Souders is dead, limitation commenced to run against Clara Kitchens and Mary Jost at the time of his death.

The judgment should be reversed and the cause remanded, and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.