MILDRED L. MUZZY, Plaintiff-Respondent, v. TONY T. MUZZY, Defendant-Appellant, No. 43238—261 S. W. (2d) 927.

Division One, September 14, 1953.

Motion for Rehearing or to Transfer to Banc or to Reverse and Remand Overruled, November 9, 1953.

*Kirchner & Vanice, Kaer P. Vanice II* and *Louis L. Kirchner* for appellant.

374

*Marcy K. Brown, Jr.,* for respondent.

COIL, C.—Action to quiet title to real estate known as 4721 Charlotte Street, Kansas City. The facts are not in dispute. Otis A. Muzzy, the common source of title, died ▮ testate June 17, 1921. The initial question on this appeal is whether under the will testator's two sons were vested or contingent remaindermen at the death of the testator. The pertinent provisions of the will are.:

"(1) I give, devise, and bequeath to my wife MARY E. MUZZY a life estate in the house and lot at 4721 Charlotte St. The same being more particularly described as Lot 9, Block 1 Fairland an addition to Kansas City, Missouri. She to have full use of said premises during her natural life and to have full enjoyment of all rentals or other income therefrom, but she is not to sell or incumber said property. But in case the house is injured by fire, she may collect the insurance money and rebuild or repair the house.

"(2) I give and devise and bequeath to my sons Lynn C. Muzzy of Kansas City, Missouri and Tony T. Muzzy of Casey, Oklahoma any other real estate of which I may be seized and possessed at the time of my death share and share alike. I also give to my said two sons the house and lot 4721 Charlotte St., above referred to at the death of the said Mary E. Muzzy, my wife. * * *

"(3) In case of the death of the said Lynn C. Muzzy, without issue surviving me, before my death I will all his share in my real estate to the said Tony T. Muzzy in case he survives me.

"(4) In case of the death of said Lynn C. Muzzy before my death leaving issue surviving me, such issue shall take his share hereunder.

"(5) In case of the death of the said Tony T. Muzzy before my death, I will all his share in said real estate to his heirs at law.

"(6) In case of the death without issue of Lynn C. Muzzy and the death of Tony T. Muzzy, both before my death, the property herein devised and bequeathed to them shall go to said Tony T. Muzzy's heirs at law."

Mary E. Muzzy, the widow, Lynn C. Muzzy, a son by a first wife, and Tony T. Muzzy, a son by Mary, survived testator. The widow took under the will. On May 5, 1927, Lynn and his wife, Virginia, executed a deed of trust on an undivided one-half interest in the Charlotte Street property (subject to Mary's life estate), to Kiernan, trustee for Webb, securing a $3,000 note. On October 21, 1929, the deed of trust was foreclosed and Mary (widow and life tenant) purchased and received a trustee's deed, reciting a $500 consideration, conveying to her an undivided one-half interest, subject to her own life estate.

On September 12, 1936, Lynn died, survived by his widow, Virginia, and an only child, Mildred (plaintiff), and by Mary, the life tenant. Mary died testate August 10, 1946, and, by her will, devised to her son, Tony (defendant), the Charlotte Street property, as well as all her other real and personal property.

The trial court held that the will of Otis Muzzy created contingent remainders in Lynn and Tony and that, inasmuch as Lynn predeceased the life tenant, Mary received no title or interest by virtue of the trustee's deed in foreclosure of Lynn's $3,000 deed of trust.

We think that the trial court erred in so holding. By paragraphs 1 and 2 of the will, testator devised a life estate to his widow with remainders to his sons which vested upon testator's death. Paragraphs 3, 4, 5, and 6 dealt with contingencies which did not occur, viz., the death of Lynn or Tony prior to testator's death. Thus, these paragraphs are of no concern unless they contain language which clearly indicates testator's intent to make the remainders to Lynn and Tony contingent rather than vested. It is apparent that there are no provisions in those paragraphs which so indicate.

Respondent says that the expression "at the death of * * * my wife" (in the sentence: "I also give to my said two sons the house and lot 4721 Charlotte St., above referred to at the death of the said Mary E. Muzzy, my wife") means that no estate vested in Tony or Lynn until the death of the life tenant, and thus whether an estate would vest in either son depended upon his surviving the life tenant. This contention is not sound. We have considered the question often and have consistently held that, in the absence of some other language clearly indicating to the contrary, expressions such as "at the death" or "after her death" relate to the time of commencement of possession and not to the vesting of the estate. "The mere fact that the will created a precedent life estate in the widow would not defer the vesting of the remainder in the children in the absence of some specific provision in the will to the contrary." Harlow v. Benning, 357 Mo. 266,

268, 207 S.W. 2d 471, 473[1-3]; Legg v. Wagner, Mo. Sup., 155 S.W. 2d 146; Laird v. Lust, Mo. Sup., 98 S.W. 2d 768, 770[3].

In Dunbar v. Sims, 283 Mo. 356, 222 S. W. 838, the will provided in part: " 'Item Third: I will and devise all of my real estate to my wife, Mary E. Sims, for and during her natural life, and at her death, I will and devise that all my real estate shall go and vest absolutely in fee, in my seven children, namely, Charles T. Sims, Enoch Sims, George Edward Sims, Luther Sims, Lee Roy Sims, Arch Sims, and Fannie Dunbar, equally share and share alike.

" 'Item Fifth: I will and direct that my said executrix, Mary E. Sims, shall have power, and I hereby give her power and authority to sell and convey any or all of my real estate as she may see fit and proper, and make good and perfect title to the same in fee simple to the purchaser and to make distribution of the proceeds of such sale among my said children and herself,' etc." (222 S.W. 839.)

We said: "It is contended by appellants that the children of testator acquired no vested interest as remaindermen in the real estate aforesaid prior to the death of the widow, Mary E. Sims, on April 24, 1917, and that, by reason thereof, the plaintiffs had no interest in their father's estate, which was the subject of conveyance, at the time they executed their respective deeds to Archie and Charles T. Sims. This contention does not appeal to us as being sound. On the contrary, we are decidedly of the opinion that upon the death of testator in 1907 his widow, Mary E. Sims, by virtue of paragraphs 3 and 5 of the will aforesaid, became vested with a life estate in the real estate in controversy, with full power of disposition during her life, and that upon the death of testator in 1907 his seven children heretofore named became vested with an equitable estate in remainder subject to the life estate and power of disposition given to the widow aforesaid. [Citing cases.]

"In the absence of any provision in the will calling for a different construction, the foregoing authorities are conclusive against appellants as to the merits of this controversy.

"It is insisted, however, by appellants, that the will as clearly expressed on its face shows a definite intention by the testator that the title was not to be vested in the children until the death of the executrix, for he says: 'And at her death I will and devise that all my real estate shall go and vest absolutely in fee, in my seven children, * * * equally share and share alike.'

"Such expressions as are found in the above quotation have frequently come before the courts for consideration, and have uniformly been construed, when considered in the light of foregoing facts, to relate to the times when the devisees shall have possession, and have nothing to do with the vesting of the estate. [Citing cases.]" (222 S.W. 839, 840.)

Nor is there merit in respondent's contention that paragraphs 3 to 6, inclusive, created an uncertainty as to the persons who were to receive the remainders, because obviously each of those provisions referred to disposition of the respective sons' shares only in the event that either or both predeceased testator. As noted, both sons survived the testator, in which event the remainders were to vest in the sons at testator's death.

Respondent makes the further contention that, even if Lynn and Tony were vested remaindermen at testator's death, the title obtained by Mary, the life tenant (as a result of her purchase at the foreclosure), was for the benefit of remainderman Lynn; and that plaintiff, as Lynn's sole heir, is the owner of an undivided one-half interest subject to contribution of the $500 paid by Mary at the foreclosure.

It is a well-settled general rule that a life tenant is, in a limited sense, a trustee for the benefit of the remaindermen. It has been stated that "If a tenant for life purchase in an outstanding incumbrance upon an estate it is regarded as having been done for the benefit of the reversioner as well as himself, if the latter will contribute his proportion of the sum paid therefor." Cockrill v. Hutchinson, 135 Mo. 67, 74, 36 S.W. 375, 377. And the established rule requires that the contribution shall be made within a reasonable time. Allen v. De Groodt, 98 Mo. 159, 11 S.W. 240 (same case, 105 Mo. 442, 16 S.W. 494); Morrison v. Roehl, 215 Mo. 545, 114 S.W. 981; Peak v. Peak, 228 Mo. 536, 128 S.W. 981; Peterson v. Larson, 285 Mo. 119, 225 S.W. 704; Mathews v. O'Donnell, 289 Mo. 235, 233 S.W. 451; Witcher v. Hanley, 299 Mo. 696, 253 S.W. 1002; Duffley v. McCaskey, 345 Mo. 550, 134 S.W. 2d 62; Souders v. Kitchens, 345 Mo. 977, 137 S.W. 2d 501 (same case, 344 Mo. 18, 124 S.W. 2d 1137); 31 C.J.S., Estates, § 35, pp. 44, 45; 33 Am. Jur., § 463, pp. 999, 1000.

We are of the opinion, however, that this rule is not applicable to the particular facts of the instant case. Here, so far as the record shows, the remainderman borrowed (presumably for his exclusive benefit and wholly apart from any relationship with the life tenant) $3,000 secured by his vested remainder in an undivided one-half interest. The deed of trust executed by Lynn and his wife was duly recorded, was regular on its face, and the trustee and the beneficiary were strangers to the life tenant and to the grantors. The remainderman defaulted and the resulting foreclosure was not procured, directly or indirectly, by the life tenant. Lynn's undivided one-half interest (subject to the life estate) was sold at public auction at the south front door of the Jackson County Circuit Courthouse at Kansas City to the highest bidder. The highest bidder was Mary Muzzy, the life tenant. There was no evidence as to the amount of principal or interest due on the note at the time of the sale. Under these circumstances, we are of the opinion that the life tenant was, so far as the

foreclosure sale was concerned, in the same position to the remainderman as a stranger would have been and that she acquired for her own exclusive use and benefit the remainderman's undivided one-half interest.

It may be conceded that, under the broad language of some of the decisions cited above, the rule there stated is not expressly so limited as to exclude its application to a factual situation like the instant one. However, the language of those cases must be construed in the light of the facts then before the court. We have examined all of those cases and others; in none were the facts like or similar to those of the instant case; and we have found no case in this or any other state involving a like factual situation. The cases applying the rule are variously situations in which the encumbrance had been created by the grantor, testator, or life tenant, or by the terms of the will or deed, or wherein the life tenant had not paid taxes and thereafter bought in, or had someone buy in for him, a tax title. And in some of the cases, the evidence was that the life tenant had in some manner. intentionally manipulated for the purpose of defeating the remainderman's estate.

Now it is true, as we have heretofore noted, that a life tenant occupies a relationship, sometimes referred to as that of a quasi trustee, to remaindermen. But this relationship is clearly not a pure trusteeship. We held in Morrison v. Roehl, supra, that even in those instances proper for the application of the general rule, a deed to a life tenant conveying the interest of a remainderman acquired on foreclosure is not void. (114 S.W. 984.) If the payment or the purchase by the life tenant was in discharge of his own individual obligation, it is regarded as the fulfilment of a duty of the life tenant, and the title obtained by the life tenant inures to the benefit of the remainderman; and if the life tenant's payment or purchase was in discharge of an obligation of both the life tenant and the remainderman, the remainderman may enjoy the benefits of the life tenant's act only upon contributing his proportionate share within a reasonable time. Souders v. Kitchens, supra, 137 S.W. 2d 503[4]. And we have said: "Now, in these (Missouri) cases the life tenants (quasi trustees) should not be permitted to acquire the fee simple estates in the properties by purchases at sales *resulting from the neglect of the duties which have been imposed upon them* in order to assure their preservation and protection of the corpora of the estates for the remaindermen, but such purchases in equity and good conscience should inure to the benefit of the remaindermen." (Emphasis the present writer's.) Farmers' Mut. Fire & Lightning Ins. Co. v. Crowley, 354 Mo. 649, 653, 190 S.W. 2d 250, 253.

The relationship between a life tenant and remaindermen is well expressed in Mallett v. Hall, (Sup. Judicial Ct. of Maine), 150 A. 531, 534: "It has been convincingly pointed out, that the life tenant

is a trustee for the remainderman only in a limited sense. The trust is not pure, but only quasi. 2 Perry on Trusts, § 540. The life tenant is a trustee for the benefit of the remainderman only in the sense that the duty rests upon him merely to have due regard for the rights of those in remainder. Hardy v. Mayhew, supra. The relation is in the nature of a trust. Smith v. Daniel, 2 McCord, Eq. (S.C.) 143, 16 Am. Dec. 641. The life tenant holds the corpus of the estate in trust in the sense that he must exercise reasonable precautions to preserve the property intact for transmission to the remainderman at the termination of the life estate, and may not injure or dispose of it to his detriment. Gibson v. Brown, 62 Ind. App. 460, 110 N.E. 716, 112 N.E. 894. And it is held that no such fiduciary relations exist between a life tenant and his remainderman as to make applicable to their transactions the rules of equity which govern trustees and cestuis que trustent, and preclude the life tenant from acquiring by gift or purchase from the remainderman his estate in remainder.''

It is pointed out in Witcher v. Hanley, supra, 253 S.W. 1004, that the quasi trusteeship of the life tenant imposes upon him an enforceable legal duty to preserve the estate for the remainderman in the condition in which he received it by paying taxes, making ordinary repairs, paying interest on encumbrances, ''and his failure to perform his duty falls under an extention of the rule which prohibits waste.'' (Although we said in Bullock v. Peoples Bank of Holcomb, 351 Mo. 587, 602, 173 S.W. 2d 753, 759, that the rule, in so far as it applies to the right of a life tenant to purchase a tax title adverse to a remainderman, ''is based on the *fiduciary relation* of the parties and not on the *duty* to pay.'')

In Brown v. Bibb, 356 Mo. 148, 154[2], 201 S.W. 2d 370, 373[2], we held that a life tenant had the same right as a stranger would have had to purchase at a judicial sale under a decree (not procured by the life tenant) which purported to sell the entire title. In Dudgeon v. Hackley, Mo. Sup., 182 S.W. 1004, testator directed that his property be divided equally among his children and one grandchild. He devised a life estate in certain land to one son and directed that he make certain payments to the other children to equalize the shares. The court en banc held that where a judgment directed the sale of such land to satisfy the charges, the life tenant could buy in the land at the judicial sale on his own account, and said (at p. 1007): ''The appellant in this case overlooks some vital questions when he undertakes to invoke rule of a trust relation; i.e.: (1) This court held that there was no obligation upon Dudgeon to discharge this charge against the land placed in his possession by the will; (2) that the effect of the decree was to sever the trust relations, if in fact any had been created by the will; (3) that this was a judicial sale, at which all parties ought to stand upon an equal footing. Had a stranger bought in the property, no question [932] could have been raised. If, as

this court held, Dudgeon owed the reversioners no duty to protect this land from the charge, then Dudgeon would at least stand as a stranger at this sale.''

We think the general principle involved is correctly stated in Souders v. Kitchens, supra, 137 S.W. 2d 502: ''A life tenant owes to the remaindermen the duty of preserving and protecting the remainder, his relationship to the remaindermen being in a sense that of a fiduciary. Duffley v. McCaskey, Mo. Sup., 134 S.W. 2d 62. *He will not be permitted to purchase and hold property as his own where he has a duty to perform in relation thereto inconsistent with his position as a purchaser on his own account.*'' (Emphasis the present writer's.) Our review of the authorities and a consideration of the reasons for the rule convince us that the rule is not here applicable.

The question is whether the life tenant, who purchases on his own account, thereby violates a duty to, or his relationship with, the remainderman which makes improper and inequitable such a purchase. Thus, for example, since it is the life tenant's duty to pay taxes, his purchase at a tax sale or of a tax title inures to the benefit of the remainderman. The life tenant has a duty to exercise reasonable care to preserve the estate for the remainderman, and cannot, by acts of omission or commission, destroy or lessen the remainderman's estate; and, of course, a life tenant may not manipulate or collude so as to defeat the remainderman's title and acquire that title for his own benefit.

But the purchase by the life tenant in the instant case was not inconsistent with any duty owed, or inconsistent with his quasi-trustee relationship to, the remainderman. We emphasize that there was not the slightest evidence of any manipulation or collusion by the life tenant, in either causing the foreclosure or in purchasing at the foreclosure sale; there was no evidence that the consideration paid was inadequate; and there was no evidence, direct or circumstantial, that the life tenant had been in any way responsible for the loan transaction, the remainderman's default, or the foreclosure.

The general rule applied in the cases heretofore cited is a salutary one and was properly applied under the various facts of those cases. We hold, however, that, where as here, a remainderman for his own use and benefit borrows money, and places a lien against his vested remainder, in a transaction free from any taint of fraud, collusion, or participation of any kind by the life tenant, the life tenant may purchase for his own use and benefit at a public sale in a foreclosure not brought about directly or indirectly by any act of the life tenant.

It follows that Tony T. Muzzy, defendant-appellant, having received an undivided one-half remainder interest under his father's will and having received the other undivided one-half interest under his mother's will, is the fee simple owner, and that plaintiff-respondent has no interest of any kind in the Charlotte Street property. The

judgment is reversed and the cause is remanded with directions to enter a judgment consistent with the views herein expressed. The costs on this appeal are taxed against plaintiff-respondent. *Van Osdol* and *Lozier, CC.*, concur.

PER CURIAM:—The foregoing opinion by COIL, C., is adopted as the opinion of the court. All the judges concur.