FANNIE E. LADD et al., Appellants, v. FRANK W. PIGOTT, Administrator, etc.

### Division One, December 23, 1908.

1. **TRUSTEESHIP: No Bond: Compensation.** The trustee in whose hands has been placed an estate by order of court, is not to be denied compensation for his services in handling the estate, because he failed, after the death of the surety on his original bond, to give a new bond, where no loss resulted to the estate by reason of such failure.

2. ————: **Compensation: Fixed by Contract.** Contracts fixing the amount of the trustee's compensation, entered into by the trustee and the beneficiary, are not illegal; and where it has been so fixed, the rule that the trustee is entitled to charge only reasonable compensation, is inapplicable.

3. ————: ————: **Reasonable: One Per Cent.** Where the great weight of the evidence shows that a compensation to the trustee of one per cent on the live assets of the whole estate in his hands was no larger than was usually made and allowed to trustees for similar services performed in the community where the trustee lived and the services were rendered, a finding by the trial court that such compensation was reasonable will not be disturbed.

Appeal from Cooper Circuit Court.—*Hon. Wm. H. Martin,* Judge.

AFFIRMED.

*John Cosgrove* for appellants.

(1) Pigott's acts from the death of Trigg were not authorized, and he is entitled to no compensation for services rendered since then. The giving of a bond, as required by the judgment of the circuit court, was "a condition precedent to his occupancy of the trust." Tracy v. Railroad, 13 Mo. App. 299; Davis v. Bank, 78 Minn. 409. The law is well settled in this and some other States that a trustee is entitled to a reasonable compensation for his services rendered in the management and control of a trust estate. "The compensation will depend largely upon the skill displayed, the

risk and the responsibility incurred, and the extent and amount of time and labor required of him." 28 Am. and Eng. Ency. Law (2 Ed.), 1035-1041; 2 Perry on Trusts (2 Ed.), sec. 918; Maginn v. Green, 67 Mo. App. 617; Garesche v. Investment Co., 146 Mo. 453; Tracy v. Railroad, 13 Mo. App. 295. (2) The only skill required and the only labor performed by Mr. Pigott was to take credit semiannually for the dividends declared by the Central National Bank on $15,500 of its stock, and to take credit for the interest on $22,000 of the first mortgage bonds of the Boonville, St. Louis & Southern Railway Company, which was paid semiannually and deposited in the Central National Bank, and to loan $4,050, and collect the interest thereon and remit to Mrs. Ladd. The charge of one per cent per annum on the whole of the live assets is excessive. The general practice is to allow compensation by commission, and five per cent is the ordinary rule. Pusey v. Clemmons, 9 S. & R. 209; Perry on Trusts (5 Ed.), sec. 918, p. 624. "No statute has determined the rule and each case is left to depend upon the labor and trouble and the amount of the estate." Harris v. Nortin, 9 Ala. 899; Perry on Trusts, supra, p. 627. If the decree appointing a trustee has fixed his compensation, that would govern, but as it established no rate the trustee is entitled to a reasonable amount which will be ascertained by means of a judicial investigation as to the value of his services. 2 Pomeroy's Equity Juris. (2 Ed.), 1084.

*W. M. Williams* for respondent.

(1) The trustee was not in default for failure to make annual settlements with the court. The decree did not provide that he should do so. He was only directed by the order of appointment to make reports, from time to time, as required. He furnished a detailed settlement each year to the beneficiary, which was sufficient. Matter of Accounting of Mason, 98 N.

Y. 535.    (2)    The trustee qualified by giving bond with proper security, which was approved by the court.   He continued, with the consent of the appellants, to serve as trustee after the death of the surety, and no new bond was required.   It is too late for appellants to object to his right to compensation after having consented to receive his services and after having accepted payments from him as trustee.   Greeley v. Bank, 103 Mo. 222.   (3)   The compensation of the trustee was fixed in 1887 by an agreement between him and the beneficiary.   His charges were in strict accord with the contract entered into at that time. No objection was made thereto by appellants for more than eleven years.   The courts will not interfere with an agreement between the trustee and the beneficiary fixing his compensation.   Bowker v. Pierce, 130 Mass. 262.   (4)   Aside from the agreement of the parties, the testimony clearly shows that the charges made by the trustee were reasonable and were similar to the allowance usually made in such cases in the locality where the trustee was appointed, and where the services were rendered.   The weight of the evidence was clearly with respondent upon this proposition.   (5). While there was no change in some of the securities during the trusteeship in this case, yet it was the duty of the trustee to see that the estate was safely invested and to carefully guard the securities in his hands and to be prepared to make any changes that circumstances should require.   It is entirely proper to consider the amount of the estate and the responsbility devolving upon the trustee in fixing his compensation. Wagstaff v. Lowerre, 23 Barb. 225; Re de Peyster, 4 Sanford 511; 7 Law Ed. N. Y. Chancery Rep. 510, and note.

WOODSON, J.—This cause originated in the circuit court of Cooper county by appellants filing therein exceptions to the final settlement made by the ad-

ministrator of the estate of John T. Pigott, deceased, trustee of certain funds willed by Joseph L. Stephens to his widow, Fannie E. Stephens, since intermarried with her coappellant, W. M. Ladd.

Since the facts of the case are fully and clearly stated by counsel for respondent, we will adopt that statement as the statement of the case. It is as follows:

"The sole controversy presented by this appeal is concerning the compensation of John T. Pigott, now deceased, for services as trustee by appointment of the circuit court of Cooper county, under the circumstances hereinafter stated.

"Appellant, Fannie E. Ladd, who was the second wife of Joseph L. Stephens, deceased, became entitled, upon his death, in 1881, under a marriage settlement, to the profits and income from a portion of his estate. She subsequently married W. M. Ladd.

"She and her second husband, in 1885, instituted a suit in equity in the circuit court of Cooper county, Missouri (making the children and heirs at law of Joseph L. Stephens, deceased, defendants), for the appointment of a trustee, to receive, hold, manage and control the funds in which she had said life interest. On the 14th of November, 1885, a decree was entered in said cause by which John T. Pigott was appointed trustee and directed to receive said funds and to collect and pay over to Mrs. Fannie E. Ladd the interest and income thereof and to preserve the principal for the parties entitled thereto. It was further ordered that the trustee execute a bond, with securities to be approved by the court, in the penal sum of $100,000, conditioned for the faithful performance of his duties as such trustee; and the decree further provided that said trustee, from time to time, as required, present his accounts for the examination of the court.

"Mr. Pigott accepted the trust, qualified by giving bond, with Dr. Wm. H. Trigg as security, which was

approved by the court, and received from the administrators of the estate of Joseph L. Stephens, deceased, 123 shares of stock of The Boonville, St. Louis & Southern Railway Company, of the par value of $16,000, which was non-productive and of no market value. He also received 15 first mortgage bonds of The Boonville, St. Louis & Southern Railway Company, of the par value of $15,000; 155 shares of the stock of The Central National Bank, of Boonville, of the par value of $15,500; cash, $2,600; and three Boonville township funding bonds, of the par value of $700; and, before his first report, 7 additional first mortgage bonds of The Boonville, St. Louis & Southern Railway Company, of the par value of $7,000; cash $750; making a total, excluding the non-productive railway stock, of $41,500; and other small sums during the continuance of the trust. Mr. Pigott continued to act as trustee from his appointment, on the 14th of November, 1885, until his death, in December, 1904.

"Dr. W. H. Trigg, the surety upon his bond, died in 1895. No application was made to the court by any of the interested parties to require a new bond, and none was given. He continued to act as trustee without objection from any of the parties.

"At the February term, 1887, the trustee presented a report to the circuit court of Cooper county, setting out in detail the assets received by him and the payments that he had made to the appellant, Fannie E. Ladd, and taking credit in the settlement for an allowance to himself as trustee of $415, which was one per cent of the assets received from the administrators, excluding the unproductive railway stock, but did not include a percentage upon $4,635, which he had collected during the year as dividends and interest. He deducted the $415 from the income and paid the remainder to Mrs. Ladd, the appellant. This settlement was approved by the court, as shown by the

judge's docket, but there is no entry in regard to it upon the record proper.

"Mr. Pigott, before filing this settlement or making any charge for his services, wrote to the husband of Mrs. Ladd, who was authorized to act as her agent and to represent her in the matter, on the 5th of February, 1887, saying: 'Will you please advise me at your convenience what commission would be reasonable. Our probate court usually allows 1 per cent on gross amount of estates. That stock in R. Ry. not being productive should not be taken apc. Would be pleased to have amount of my commissions acceptable to Mrs. Ladd and yourself.' To this there was a reply on February 10th, 1887, saying: 'I should think the commission of 1 per cent mentioned, barring the stocks that have no value, as suggested, reasonable compensation, in which my wife concurs. You might compute this and remit any balance remaining.'

"On the 13th of July, 1887, Mr. Ladd wrote to Mr. Pigott calling his attention to the fact that he had not charged his commission of one per cent on $4,635, income, and this was deducted in the next settlement.

"In 1888 a detailed statement showing the receipts, the payments and the assets on hand was sent to Mrs. Ladd and received by her. In this settlement the trustee credited himself with an allowance of $451.05, which was one per cent of the estate in his hands. It is admitted that no objection was made to this settlement. The next year a similar detailed settlement was forwarded by the trustee to the appellants, in which he credited himself with $444.75 compensation, which was one per cent of the estate in his hands in that year. The compensations in each year were deducted from the income and only the remainder thereof paid to Mrs. Ladd. A settlement, as shown in respondent's additional abstract, was made for each year, beginning in 1887 and continuing until the death

of Mr. Pigott, and sent to appellants. Each of these settlements was full and complete, and a deduction of one per cent upon the assets in the hands of the trustee during each year, except the railroad stock, was made from the income, and so stated in the settlement.

"Mr. Ladd, in his deposition, says that he made an objection to the commissions after examining the third settlement, and that this appears from the correspondence, and that the letter showing the objection was in the hands of appellants' counsel. No such letter was introduced in evidence or appears in the record. Upon the contrary, a letter dated January 29th, 1898, was read in evidence. This letter was addressed to Mr. Pigott and contains the following: 'I premise this statement with the belief that this trust will earn the usual allowance to the trustee of five per cent on the amount administered upon, from the beginning to the end.'

"Mr. Ladd, in his testimony, stated that he understood from the letters of February 5th and 10th, 1887, that there was only to be a commission of one per cent on the total assets of the estate for the services of the trustee during his entire term. In reply to the letter of January 29th, 1898, supra, Mr. Pigott wrote, on February 1, 1898, saying: 'Your favor of the 29th *ultimo* received and contents noted. The 1 per cent commissions charged is the same commissions allowed by our probate court in settlements of curators, etc.; do not think it an unreasonable charge, and supposed it was satisfactory as eleven statements have been made out without complaint.' Mr. Ladd replied to this letter on February 7th, 1898. There is no statement in the reply that any previous complaint had been made. The letter says: 'As to your notation that no complaints have been made, it is quite evident complaints would have proven useless.'

"After the death of John T. Pigott his administrator presented a report to the circuit court of Cooper county showing that he had in his hands the assets belonging to this trust fund, which had been kept separate from the estate of the trustee, and asked that the court direct the disposition to be made of them, and he presented a detailed report of the condition of the funds, and asked that the accounts of the trustee be approved. The court had previously appointed The St. Louis Union Trust Company to succeed John T. Pigott, deceased, as trustee, and the assets were ordered turned over to said trust company, which was done by Mr. Pigott's administrator.

"The appellants filed exceptions to the commissions which had been charged by Mr. Pigott and deducted from the income of the estate in his hands.

"Upon the trial of these exceptions the various settlements that had been forwarded to Mrs. Ladd were introduced in evidence, and also the letters of February 5th and 10th, and July 13th, 1887, and those of January 29th, February 1st and 7th, 1898, above referred to.

"It appeared that two of the heirs of Joseph L. Stephens, deceased, each of whom was entitled to one-eighth of the corpus of the trust fund, transferred their interests to the appellant, Fannie E. Ladd, and two-eighths of the principal fund were distributed by Mr. Pigott in his lifetime to her. The remainder of the railway stock and bonds and the bank stock received by him from the administrators of the estate of Joseph L. Stephens, deceased, remained in his hands, and the investment was not changed during his trusteeship. His administrator turned over these bonds and stock to his successor.

"The appellants read the depositions, taken in St. Louis, of several gentlemen residing in that city, who testified that guardians and curators were generally allowed by the probate court of that city for

their services five per cent of the money disbursed by them, and, with some qualifications, that this rule applied to trustees, and was regarded as fair remuneration in the city of St. Louis; also, that the services rendered by trustees were similar to those of curators.

"Appellants also called R. W. Whitlow, a real estate agent of Boonville, who said that five per cent would be a reasonable compensation, but, on cross-examination, qualified the statement to a considerable extent.

"Messrs. Pendleton, Johnson and Rutherford, of the Boonville bar, and Mr. Trigg, who had served as trustee under appointment of the circuit court of Cooper county in four separate estates and as curator in a number of instances, and Mr. Draffen, a former public administrator of that county, testified on the part of the respondent that the usual and customary allowance to curators and guardians in that county was one per cent annually of the total value of the estate, and that this was also the customary allowance made by the circuit court to trustees acting under its appointment, and that, in their opinion, the charges made by Mr. Pigott for his compensation were the usual charges in Cooper county, and were reasonable for the services rendered by him.

"The court overruled the exceptions filed by appellants and approved and confirmed the trustee's accounts as presented by his administrator, including the charges for his services, and the case has been brought here to review this action of the trial court."

I. The first insistence of counsel for appellants is that all acts of Mr. Pigott, the trustee, after the death of his security, Dr. Trigg, were unauthorized, and for that reason he was not entitled to compensation for any of the services performed by him subsequent to that date.

It is not pretended that the interest of Mrs. Ladd suffered by the trustee's failure to execute a new bond after the death of Dr. Trigg, but, upon the contrary, the record affirmatively shows that he preserved the trust funds intact, separate and apart from his own, invested them and collected the interest and dividends earned thereby and faithfully accounted for and paid same over to her during his life, less the compensation he retained in payment for his services. Had Mr. Pigott executed a new bond upon the death of Dr. Trigg, the income from the trust fund in his hands would not have been augmented in the least thereby; and, as there was no loss or waste of the fund or of the income thereof, it is difficult to see any justice or equity in the contention that he should be denied all compensation for the services performed because of such failure. None of the beneficiaries of the funds seemed to think it was necessary for him to give a new bond, or, at least, none of them took any step with that object in view. Presumably they knew Mr. Pigott was solvent and that the funds were perfectly secure in his hands without bond. But, however, that may be, since the undisputed facts show no one was injured by the omission, we must decide this insistence against the appellants.

II.  It is next contended by appellants that the trustee was entitled to charge only reasonable compensation for the services performed by him as such trustee. Ordinarily that is true, but that rule of law is inapplicable where the amount of the compensation to be paid has been fixed by contract, as was clearly done in this case, as shown by the correspondence had between Mr. Pigott and Mr. Ladd, his wife's legal representative in the matters involved herein. Such contracts are not prohibited by law, and when honestly entered into between the trustee and the beneficiary,

the courts will not interfere therewith. [Bowker v. Pierce, 130 Mass. 262.]

This contention is also decided against the appellants.

III.   But independent of the contract entered into between the parties, the greater weight of the evidence shows the compensation charged by the trustee was reasonable and was no larger than was usually made by and allowed to trustees for similar services performed in the community where Mr. Pigott was appointed and where the services were rendered.

It must, therefore, follow from these observations that the judgment of the circuit court must be affirmed. It is so ordered.

All concur.