In the ESTATE OF Joe W. INGRAM, (Deceased) Centerre Bank of Kansas City, Trustee, Plaintiff-Respondent-Appellant,

v.

John ASHCROFT, Attorney General, and David T. Blake, et al., Intervenors-Appellants-Respondents.

Nos. WD 37262, WD 37246.

Missouri Court of Appeals, Western District.

May 20, 1986.

Albert Thomson, James M. Matthews, Kansas City, for plaintiff-respondent-appellant.

James J. Wheeler, Keytesville, for intervenors-appellants-respondents.

Before LOWENSTEIN, P.J., and TURNAGE and BERREY, JJ.

BERREY, Judge.

This is an appeal from the judgment of the trial court in Chariton County, Missouri, holding that plaintiff's fee as a trustee was limited, in part, by a letter between it and the settlor. The following facts are set forth.

Joe W. Ingram was a prosperous resident of Chariton County, Missouri. Having no children of their own, Mr. Ingram and his wife decided to set up a trust in which the income from the assets would be used "for charitable and education purposes in Chariton County" and named the

Union National Bank, now known as Centerre Bank of K.C., the plaintiff,[1] and Marjorie H. Henry[2] as co-trustees.

Set forth in full below is the letter upon which the controversy exists concerning the plaintiff's fee:

"UNION NATIONAL BANK

KANSAS CITY, MISSOURI

July 29, 1957

PERSONAL

Mr. Joe W. Ingram President
Salisbury Savings Bank
Salisbury, Missouri

Dear Mr. Ingram:

This will acknowledge receipt of your letter of July 27, 1957.

You are correct, we should have covered the matter of Trustees fees in a letter to you. I wrote a memorandum for our file and, quite frankly, should have forwarded you a copy of same.

We wish to advise that this bank's total fee for acting as Trustee for a trust created under your Last Will and Testament dated July 25, 1957, will be 2/10ths of 1% of the principal amount per annum.

As you know, our customary charge is 4/10th of 1%, but since you are leaving your property for the benefit of charity, we feel that is proper for us to reduce our fee to the amount set forth in the preceding paragraph.

It seems to me that the division of attorneys fees is something that should be agreed upon between the attorneys, and perhaps the best time for this agreement is after the work has been performed. Legally, it is my opinion, that they would be entitled to split the fee equally. So unless they make some different arrangements, it would seem to be that there is nothing to agree to. In any event, it seems to me that this is a mat-

ter for the attorneys and with your approval, we will do nothing further in connection with this fee. Will you please advise us.

Is there anything else that should be covered that has been overlooked? We also agree that this should be done while it is fresh in our minds and I too hope that it will be sometime before these matters need to be given any further consideration.

With kindest personal regards,

Sincerely,

W.S. MORRIS,

Vice President and Trust Officer"

WSM:jr

Mr. W.S. Morris, the writer of the letter, was a witness to Mr. Ingram's last will and testament which established the trust. Mr. Morris was succeeded by Mr. Kenneth A. Armstrong as Senior Vice-President and Trust Officer at the bank until his retirement in 1979. Mr. Armstrong testified that when Mr. Ingram died in 1959 the trust was activated. Mrs. Ingram died in 1963 and the assets of her estate, less a settlement amount made to her relatives, were added to the trust.

In accordance with the terms of the trust, a committee of twelve citizens of Chariton County supervise the expenditures and this is co-ordinated with the co-trustee bank by the individual co-trustee. Plaintiff's responsibilities include supervising the investments and sending checks as ordered by the committee of twelve through the individual co-trustee. Plaintiff hires all book work performed and hires a credit adjustment company to collect the loans. The individual co-trustee processes all student loan and grant applications. The plaintiff pays itself and the individual co-trustee 2/10ths of 1% each so that in

---

1. Union National merged with Columbia Union National Bank in 1969. In 1981 Columbia National merged with the Centerre Bank system and retains its current name.

2. As part of plaintiff's claim for equitable relief, the bank asserted Marjorie Henry had died in January 1984 and asked the court to fill the vacancy. The court appointed David T. Blake as co-trustee. No appeal is involved on this issue.

fact 4/10ths of 1% is now being paid out as fees.

Plaintiff's exhibit number 7 reveals that from 1959 through 1981 the bank charged the rate established by the 1957 agreement between Joe Ingram and W.S. Morris, Vice President and Trust Office of Union National Bank. In 1982 the bank unilaterally increased its fee and in 1984 the fee was again in accordance with the 1957 agreement. The fee charged in 1983 was omitted.

Plaintiff-bank sought equitable relief to allow it reasonable compensation for its services and alleged it was not limited to the 2/10ths of 1% of the principal as set forth in the Morris letter of July 29, 1957. The attorney general of the state was named defendant but did not defend the cause as the current co-trustee, David T. Blake, and nine individuals, who are beneficiaries of the trust, were granted the right to intervene to defend against the action. The trial court ruled that as to 38% of the assets of the trust, the percentage of the book value of the trust before the assets of Mrs. Ingram's estate were added, the plaintiff-bank was limited to a fee of 2/10ths of 1% of the principal by the Morris letter. As to the remaining balance (62%) of the assets, the bank was allowed reasonable compensation. Both parties appeal the judgment.

The bank's only point on appeal is the limitation on its compensation to 2/10ths of 1% of the principal with regard to the 38% of the assets of the trust, the portion the court found attributable to assets received from Mr. Ingram's estate.

The general process for determining how fees are to be arrived at is noted in *Morrison v. Asher*, 361 S.W.2d 844, 851 (Mo.App. 1962):

> As to commissions, where neither the trust instrument nor statute provides for any certain amount, percent or method of determining trustees' fees and there is no agreement in respect to such, it is proper to submit the amount of commission of the trustees to a court of equity for approval and allowance.

It is the general rule in Missouri that the trustee's fees are based upon the amount of yearly income received and paid out by them. *In re Buder*, 358 Mo. 796, 217 S.W.2d 563, 573 (banc 1949). If no fee is set he is entitled to a reasonable fee. *In re McKinney's*, 351 Mo. 718, 173 S.W.2d 898, 908 (1943), and it is wholly within the court's discretion. *In re Buder, supra,* 217 S.W.2d at 573; *In re Franz Estate*, 359 Mo. 362, 221 S.W.2d 739 (1949).

The fixing of a fee by the courts is not applicable, however, where the compensation has been fixed by contract. *Ladd v. Piggott*, 215 Mo. 316, 114 S.W. 984, 986 (1908), "If the trustee prior to the creation of the trust agrees with the settlor to act as trustee for a certain compensation, he is entitled only to that compensation, although there is no provision in the trust instrument as to the amount of his compensation." Restatement (Second) of Trust, § 242 comment H (1957). In *Marshall v. St. Louis Trust Co.*, 209 Mo.App. 13, 236 S.W. 692 (1922), the southern district of this court held that a letter written by the trustee was not a contract and therefore not binding. In that case, the letter setting forth a fee schedule was written by only one trustee when, in fact, the will nominated two trustees. The letter concerned the fees paid to both of them although the individual co-trustee did not assent to the arrangement. In the case at bar, the letter written by the bank concerns only its total fee.

As distinguished from the *Marshall* letter, the Morris letter refers to an agreement previously reached. *See In re Estate of Breyer*, 475 Pa. 108, 379 A.2d. 1305, 1309 (1977) (Letter memoralized a fee agreement and was held to be a binding contract on the parties); *see also Gubernik v. Han-Dee Pak*, 668 S.W.2d 574, 577 (Mo. App.1984) (Letter written by buyer of goods outlining terms of the parties' agreement constituted a contract.) Mr. Ingram was a successful man and knowledgeable banker. He wrote the bank two days after the will was signed regarding their fee

agreement and the bank responded noting a memo had already been placed in the file and apologizing for not mailing a copy of the memo to Mr. Ingram. The letter states, "You are correct, we should have covered the matter of trustees' fees in a letter to you." This indicates an agreement between the parties on the fee to be charged.

The acceptance by the bank of this fee schedule for over twenty years is positive indication of their acceptance. *See Thacker v. Massman Const. Co.*, 247 S.W.2d 623, 630 (Mo.1952). The parties' actions indicate a meeting of the minds and an acceptance of the fee schedule. Certainly the record indicates a manifestation of the parties' intention to perform in accordance with the terms of the agreement. *Cornwell v. Zieber*, 599 S.W.2d, 22, 24 (Mo.App. 1980).

The fact that the bank agreed to charge 2/10ths of 1% as a fee and did, in fact, use this percentage in computing fees from 1959 until 1982 is addressed by 90 C.J.S. Trust § 401 p. 750:

> The fact that a particular construction has been given effect over a long period of time is entitled to consideration not merely as an aid in interpreting the agreement or provision, but also as constituting a fixed policy and guiding rule for the trustee.

Additionally, the total fee for both trustees is what the bank usually gets when acting alone. In *Ladd v. Piggot, supra,* 114 S.W. at 985–986, the beneficiary and the trustee had contracted for a specific fee which the court approved. The court noted that it was no larger than the usual fees made and allowed trustees for similar services in the community. Here the individual co-trustee has the lion's share of responsibilities of management as compared to the bank's responsibilities of reinvestment and accounting. Therefore, for the foregoing reasons this court finds no trial court error in ruling the bank-trustee was bound by its agreement on the amount of compensation.

■ The intervenors for the Ingram trust allege the trial court erred in holding that the plaintiff-bank is not bound by the 2/10ths of 1% charge on the portion of assets attributable to Mrs. Ingram's estate and is entitled to reasonable compensation for its services subject to the court's approval. The intervenors are correct. The answer to this challenge is found in § 456.-232, RSMo.Supp.1984, which deals with the transfer of property to a trust already established by another. It provides, in part, that the assets made by devise or other transfer to a trust established by another "[s]hall be administered and disposed of in accordance with the provisions of the instrument or will setting forth the terms of the trust." § 456.232(2). Logically, a trustee who is compensated on a percentage basis is not adversely affected by this augmentation as the compensation proportionately increases. Note, Trusts: Additions: Augmentations by Persons Other than the Settlor, 48 Cornell L.Q. 585, 589–590 (1963). In this case, although plaintiff's trustee fee agreement was not contained in the trust instrument or within the terms of his will, the Morris letter sets forth the agreement specifying the bank's compensation for services to the trust of which Mrs. Ingram's assets of her estate became a part. Therefore, the trust which consists of *all* its assets are subject to the 2/10ths of 1% agreement.

■ The intervenor's final point alleges that plaintiff's petition seeks a declaratory judgment and that this action is inappropriate because "the ultimate test as to the propriety of charges and their reasonableness can only be made after the services have been rendered and charges have been computed and announced," citing to *Ferrell v. Mercantile Trust Co.*, N.A., 490 S.W.2d 397, 399 (Mo.App.1973).

In *Ferrell v. Mercantile Trust Co. N.A., supra,* the trustee was under no agreement and announced it intended to raise the charges for its services and the plaintiff, as a beneficiary, sought a declaratory judgment to prevent the increase. The court found no justiciable controversy could be

presented until after the services were rendered. In the instant case, the plaintiff-bank asked the court to determine what, if any, effect the Morris letter had on the bank's obligation to continue to charge 2/10ths of 1% and not to determine if its charges were reasonable. It is proper for a party to ask the court to declare its obligations where a question arises in the construction of a writing which effects the administration of a trust. *Spicer v. New York Life Insurance Co.*, 237 Mo.App. 725, 167 S.W.2d 457, 468 (1942).

Judgment finding plaintiff was bound by the Morris letter is affirmed. Judgment finding plaintiff was entitled to reasonable compensation on that portion of the trust attributable to Mrs. Ingram's assets is reversed; the bank is bound by the Morris letter to the fee it may charge for serving as co-trustee of the charitable trust. The cause is remanded to the trial court to enter judgment that the bank is entitled to 2/10ths of 1% of the principal amount of the Ingram trust per annum as in accordance with the W.S. Morris letter dated July 29, 1957.

All concur.