## SCOTT GRANT PEAK et al., Appellants, v. FRANCES PEAK et al.

**Division One, May 31, 1910.**

1. **MORTGAGE: Purchase by Life Tenant: For Benefit of Remaindermen.** The purchase of land at a foreclosure sale under a mortgage or deed of trust, by a life tenant, will be deemed to have been made for the benefit of the remaindermen, if they contribute their portion of the purchase money within a reasonable time. And if the life tenant purchase through an intermediary, to whom she furnishes the money bid by him at the foreclosure sale, and who without further consideration conveys to her, the rule is the same.

2. ———: ———: ———: **Remedy.** In such case the trial court should ascertain the balance due under the mortgage placed thereon by the testator and bought by the ife tenant, together with the amount due her upon an unsecured note executed to her by testator, and the amount each of the remaindermen should pay her in order to redeem their interest in the lands, and fix a reasonable time in which they might redeem.

3. ———: ———: ———: ———: **Subsequent Debt.** But the note secured by a deed of trust placed upon the land by the life tenant after her purchase at the foreclosure sale under the other made by the testator, should be charged against her.

4. ———: ———: ———: ———: **Tender: Offer to do Equity.** The remaindermen will not be barred from redeeming and recovering their land bought by the life tenant at a foreclosure sale under a deed of trust placed thereon by their common testator, simply because they did not tender to the life tenant the amount due by each of them upon the mortgage debt. In equity, if the bill contains a general offer to do equity in conformity to the decree of the chancellor, that will suffice without making an actual tender.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED.

*Ball & Sparrow* and *Dempsey & McGinnis* for appellants.

(1) Frances Peak, life tenant under the will of her deceased husband, purchased the land in controversy for all parties in interest. Allen v. DeGroodt, 105 Mo. 442; Cockrill v. Hutchinson, 135 Mo. 67; Hinters v. Hinters, 114 Mo. 26; Allen v. DeGroodt, 98 Mo. 159. (2) The court should have ascertained the amount appellants should be required to pay in order to save their interests in the lands. Tender was not necessary. Kline v. Vogel, 90 Mo. 239; Jopling v. Walton, 138 Mo. 485; Mahoney v. Nevins, 190 Mo. 360. (3) Appellants stood related to the deed by the trustee to Sisson and by Sisson to Frances Peak, as strangers, and the recital as to consideration constituted no evidence. Allen v. Kennedy, 91 Mo. 324. (4) A life tenant must keep down interest on mortgages, etc. Tiedeman on Real Property, sec. 66. Same section states rule for apportionment as between life tenant and reversioner when life tenant pays mortgage. 4 Kent Com. (11 Ed.), p. 80, side 75.

*Jesse B. Jones* and *J. D. Hostetter* for respondents.

(1) Appellants ignore Frances Peak's marital interests in her husband's homestead as his widow. Regardless of the will devising to her a life estate, she was entitled to the following rights and interest in the farm in controversy: 1st—She was entitled to dower, which was a life estate in a third interest. 2nd—She was entitled to homestead, which was a qualified life estate in the whole, provided it did not exceed in value $1500, and it clearly did not, even without the McCune first deed of trust and her own $300 second deed of trust on the farm being taken into consideration. 3rd —She was entitled to her quarantine rights until dower be assigned, which was never done. As to the

homestead of the widow, it has been expressly held that a husband cannot deprive his widow of that estate by will, for it is not his to will. It is an estate which the law vests in his widow and it cannot be controlled by his will at all. Rockley v. Rockley, 97 Mo. 76. Neither can the widow be deprived of dower by will unless a *quid pro quo* be given. So it would seem that even conceding that there was some evidence that Frances Peak agreed to cancel her $300 note against her husband, on condition that he would devise to her a life estate in the farm, the promised devise constituted no consideration, because it was giving her only what the law would give her in any event. Frances Peak as mortgagee in possession after condition broken (as she was after her $300 mortgage debt became due), was entitled to buy in under any outstanding incumbrance and thus protect her rights as mortgagee, regardless of her position as life tenant under her husband's will. While she became a life tenant under the terms of her husband's will, still she was also a mortgagee and was in possession after condition broken. The step-children would be compelled to redeem from the $300 mortgage debt before they would have a right to redeem from the McCune deed of trust debt, in any event. Martin v. Turnbaugh, 153 Mo. 172; Hubble v. Vaughn, 42 Mo. 138; Johnson v. Houston, 47 Mo. 227; Honaker v. Shough, 55 Mo. 472; Harrington v. Fortner, 58 Mo. 460; Hunt v. Sellek, 118 Mo. 588; Priest v. St. Louis, 103 Mo. 657; Jackson v. McGruder, 51 Mo. 59; McCormick v. Fitzmorris, 39 Mo. 34; Howard v. Thornton, 50 Mo. 291. (2) There is no legal or moral impediment against the right of a life tenant to buy the remainder interest at a sale under a deed of trust. The life tenant is not a cotenant with the owners of the remainder interest. Remaindermen have a perfect right to buy the estate of the life tenant when sold under execution, and the life tenant has the same right to purchase the remainder

estate when sold either under execution or a' deed of trust sale. Martin v. Castle, 193 Mo. 183. In the case at bar Frances Peak was not a party to the deed of trust given to McCune. She was under no personal obligation to pay any portion of the same. Yet she did in point of fact furnish $300 of the money to her husband, which was paid thereon, and after his death made other payments out of her own means, and sacrificed over one-half of her $400 absolute property as widow, and all of her year's allowance, in order that the administrator might use these funds in liquidating the liens, and allowed demands against the estate of her deceased husband, and thus prevented a sale of the equity in said land under order of the probate court for the purpose of paying debts. Plaintiffs in their petition do not proffer to pay any of the costs or expenses of sale, neither do they offer to reimburse Frances Peak for her large outlays in reducing the note to $236.40. All the equity is on the side of the widow, Frances Peak.

WOODSON, J.—The legal propositions in this case will be better understood if we set out the pleadings.

The petition filed herein is as follows (Formal parts omitted):

"Plaintiff states that George W. Peak departed this life at said county of Pike on the —— day of July, A. D. 1901, testate, having made a will which was duly admitted to probate by the probate court within and for the county and State aforesaid. That the estate of said deceased was duly administered in and by said probate court, and final settlement thereof made.

"That the said George W. Peak left surviving him his widow, the said Frances Peak, and his children and issue born of a former marriage other than that with the said Frances Peak, viz: the said Scott Grant Peak, Mollie Purnell, wife of George Purnell, and

Thomas William Peak, all of whom are beneficiaries named and provided for in and by the said will of said deceased.

"That the said Thomas William Peak is a person of unsound mind and incapable of managing his affairs and, in consequence thereof, is confined as a patient in the insane asylum at the city of Fulton, in Callaway county, in said State.

"That in and by his said will the said deceased devised to his said wife and widow, for and during her natural life, the following described real estate situate, lying and being in the county of Pike and State of Missouri, to-wit:    The west half of the northwest quarter and the northwest quarter of the southwest quarter of section four, in township fifty-four north, range four west of the Fifth Principal Meridian, containing one hundred and twenty-four and eighty-nine one hundredths acres, more or less, to be held, used and enjoyed by the said Frances Peak for and during her natural life, and her estate therein was limited to that period and subject to such life tenancy; he devised the said lands in remainder in fee to his said children as follows:

"To the said Scott Grant Peak, the south forty-six acres of said lands; to said Mollie Purnell the dwelling house and premises and thirty-one acres north thereof, and to said Thomas William Peak the north forty-six acres of said lands.

"That in the month of December, A. D. 1883, the said George W. Peak and Ellen Peak, his then wife, executed a deed of trust in the nature of a mortgage upon the above described lands to William G. McCune as trustee to secure to John McCune the payment of a promissory note for $840; that divers payments were made on said note, so that the sum of two hundred and fifty dollars thereof remained unpaid and due thereon at the time of the death of the said George W. Peak, which said note and deed of trust the said

Frances Peak became the owner and holder of after the death of her said husband George W. Peak and continued thereafter to hold the same; that on or about the 27th day of November, A. D. 1905, contriving and designing to cheat and defraud the said children of her deceased husband, parties herein, out of their remainder interests in said lands, said Frances Peak caused a pretended sale of said lands to be made, under said deed of trust, and induced and procured one L. S. Sisson to become the purchaser thereof for her at the pretended sale so had, and the said Sisson immediately thereafter conveyed said lands to said Frances Peak, without having paid anything of value for said lands or received anything of value therefor, and with full notice of the rights and interests of the plaintiff and the said Thomas William Peak therein.

"That on the 28th day of November, A. D. 1905, the said Frances Peak executed a deed of trust in the nature of a mortgage, conveying said lands to said J. D. Layne to secure to said Lem T. Patterson the sum of three hundred and twelve dollars, expressed in a promissory note in said deed described; that both the said J. D. Layne and Lem T. Patterson had notice of the rights and interests of these plaintiffs and of the said Thomas William Peak in and to the said lands at the time said three hundred dollars were loaned and said lands taken as security therefor.

"That the said Frances Peak received said conveyance of said lands and now holds the same subject to all of the rights and interests therein, of these plaintiffs and the said Thomas William Peak, that existed prior to said pretended sale under said deed of trust so made to said William G. and John McCune.

"Plaintiffs further state that they are ready, willing and here offer to pay their proportion of the balance of the principal sum of said note so made to said John McCune remaining unpaid at the time of the death of said George W. Peak, as soon as the same

is ascertained, fixed and determined by the court; that the said three hundred and twelve dollars so borrowed of said Patterson ought to be charged against the interest in said lands of the said Frances Peak; that said lands are of the reasonable value of three thousand dollars.

"Plaintiffs therefore pray that the rights and interests of the respective parties be investigated, ascertained and determined; that the plaintiffs Scott Grant Peak and Mollie Purnell be adjudged to be the owners of the respective tracts of land devised to them as aforesaid, subject to the life tenancy therein of the said Frances Peak, and the lien thereon for their proportion of the said debt of two hundred and fifty dollars, with leave to pay off and discharge the same; that the said money so borrowed of said Patterson, be charged against the interest of said Frances Peak; that said pretended sales of lands be held for naught; that a guardian be appointed for said Thomas William Peak; that his rights and interests in said lands be protected and that plaintiffs have all such orders and decrees as may be deemed meet and proper and costs herein."

The separate answer of Frances Peak is as follows:

"Now at this day comes Frances Peak, defendant, and for her separate answer to plaintiff's petition filed in the above entitled cause, denies each and every allegation therein contained except such as are hereinafter specifically admitted to be true.

"Defendant admits the death of George W. Peak and that he died testate; that his will was admitted to probate and that his estate was administered and finally settled as alleged in plaintiffs' petition; that said George W. Peak left surviving him this defendant as his widow, and the said Scott Grant Peak, Mollie Purnell and Thomas W. Peak, his children, all of

whom are named in said will as beneficiaries thereunder.

"Defendant further admits the execution of the deed of trust by the said George W. Peak and Ellen Peak his then wife, under date of December 15, 1883, conveying to William G. McCune as trustee the lands described in plaintiffs' petition to secure to John McCune the payment of a promissory note therein described for the sum of eight hundred and forty dollars with interest from date at the rate of ten per cent per annum, compounding annually.

"Defendant further answering, says that on March 4, 1895, she loaned to the said George W. Peak the sum of $300 for which he gave to this defendant his negotiable promissory note of even date therewith, drawing eight per cent interest, per annum, compounding annually, and secured said note by a deed of trust on the lands described in plaintiffs' petition, which said deed of trust was duly recorded in volume 104, at page 174, in the recorder's office of Pike county, Missouri, on which said debt the said George W. Peak paid the sum of $24 on March 4, 1896, and that the remainder of said debt with accrued interest was not paid until the sale of the lands in question under the McCune deed of trust, when the same was paid out of the proceeds of the sale under said deed of trust given to John McCune, after satisfying the amount due on the John McCune note and costs of said sale.

"Defendant further answering, says that after the death of George W. Peak, she paid out of her own money on the John McCune note the following amounts, *viz*: August 1, 1903, $50; August 10, 1904, $50, and September 14, 1905, $220.

"Defendant further answering says, that during the lifetime of the said George W. Peak, she loaned to the said George W. Peak divers sums of money, amounting in the aggregate to six hundred dollars, which money was used by him, the said George W.

Peak, in and about the lands in question and for the improvement of same.

"Defendant asks therefore that she be subrogated to the rights of the mortgagee under the John McCune deed of trust for the payments so made by her on the indebtedness therein secured and that all sums of money so loaned by her to the said George W. Peak be taken into account by the court in the consideration and determination of the issues involved and further prays the court for all other and proper relief and for such judgments, orders and decrees as to the court seems just and proper."

The answer of Lem T. Patterson and J. D. Layne reads as follows:

"Now at this day come Lem T. Patterson and J. D. Layne and for their separate answer to plaintiffs' petition filed herein, deny each and every allegation therein contained, except those hereinafter specifically admitted to be true. Defendants admit that on the 28th day of November, 1905, Frances Peak borrowed of Lem T. Patterson the sum of three hundred and twelve dollars, and secured the same by a deed of trust on the premises described in plaintiffs' petition in which J. D. Layne was named as trustee; that said sum of money was loaned to the said Frances Peak in good faith. Defendants further deny any knowledge of fraud as alleged in plaintiffs' petition, and also deny notice of any alleged rights and interests of the plaintiffs and of Thomas Peak in the lands aforesaid and as stated in plaintiffs' petition.

"And now, having fully answered, defendants ask to be discharged with their costs."

Answer of Joe Tapley, guardian *ad litem* for Thomas William Peak, reads as follows (Caption omitted):

"Now comes Thomas William Peak, by his guardian *ad litem*, and for his answer to plaintiffs' petition states that he is not in possession of facts as alleged in

plaintiffs' petition, sufficient to form a belief as to the allegations therein set forth and asks the court to require strict proof of same.''

The amended reply is as . follows. (Caption omitted):

"Plaintiffs, in order to conform to the facts proven, for their amended reply to the separate answer of defendant Frances Peak, deny each and every allegation thereof, except such as are hereinafter stated.

''They admit that George W. Peak made a deed of trust on the lands in controversy, to secure to said Frances Peak the payment of a promissory note for $300, and secured same by deed of trust on said lands, but say that said promissory note was paid off, discharged, delivered up and cancelled in the lifetime of said George W. Peak, the consideration for such discharge and cancellation being this: the said George W. Peak and Frances Peak entered into an agreement by the terms of which the said Frances agreed to discharge, cancel and treat as paid off the said note and deed of trust, if the said George W. Peak would by his will devise all of the said lands in controversy to the said Frances for and during her natural life; which said devise was so made and the said note and deed of trust were by said Frances delivered up to said George W. Peak, cancelled, paid off and discharged. And for further reply plaintiffs say that said alleged promissory note hereinbefore mentioned, and defendants' alleged cause of action thereon, did not accrue within ten years before the institution of this suit and that the same is barred by the Statute of Limitations.''

A trial was had, and at the conclusion of the evidence the court found the facts to be, and rendered judgment, in the cause as follows:

228 Sup—35

"The court finds that George W. Peak died in July, 1901, testate, having made a will which was duly admitted to probate by the probate court within and for the county of Pike, in the State of Missouri; that the estate of said deceased was duly administered in and by said probate court and final settlement thereof made; that said George W. Peak left surviving him his widow, the said Frances Peak, and his children and issue born of a former marriage other than that with the said Frances Peak, *viz.*: Scott Grant Peak, Mollie Purnell (wife of George Purnell), and Thomas William Peak; that said widow and children were beneficiaries named and provided for in and by said will; that said Thomas William Peak at the date of the institution of this action was a person of unsound mind and incapable of managing his affairs and in consequence thereof was confined as a patient in the insane asylum, at the city of Fulton, in Callaway county in said State; that in and by said will said George W. Peak devised to his said widow, for and during her natural life, the following described real estate situate in the county aforesaid, to-wit:

"The west half of the northwest quarter and the northwest quarter of the southwest quarter of section four, in township fifty-four north, range 4 west of the Fifth Principal Meridian, containing one hundred and twenty-four and 89-100 acres, more or less, to be held, used and enjoyed by the said Frances Peak for and during her natural life and her estate therein was limited to that period and subject to such life estate. Said lands were devised in remainder in fee to said children as follows: To said Scott Grant Peak, the south forty-six acres of said land; to said Mollie Purnell, the dwelling house and premises and thirty-one acres north thereof; and to said Thomas William Peak, the north forty-six acres of said land.

"That in the month of December, 1883, the said George W. Peak and Ellen Peak, his then wife, since deceased, executed a deed of trust in the nature of a mortgage upon the above described lands to William G. McCune as trustee to secure to John M. McCune the payment of a promissory note for $840, with interest from date thereof at the rate of ten per cent per annum, compounding annually. That on the 4th day of March, 1895, Frances Peak, then the wife of George W. Peak, in order to assist her said husband in the payment of said note loaned him the sum of $300, for which he gave her his negotiable promissory note of date March 4, 1895, drawing eight per cent interest per annum, compounding annually, and secured by deed of trust on the lands in controversy, which said deed of trust was duly recorded in volume 104 at page 174 in the recorder's office of Pike county, Missouri. There is no evidence of any payment made by said George W. Peak on said $300 note, nor is there any evidence of the loan by Frances Peak to her said husband of any money other than said sum of $300. That George W. Peak made payment on said $840 note as follows: July 5, 1893, $125; March 1, 1893, $300; October 15, 1898, $175. That after the death of her husband the said Frances Peak made payments on said $840 note as follows: October 1, 1903, $50; August 10, 1904, $50, and September 14, 1905, $22. That after the execution of said $840 note John McCune, the payee therein, died, and Guy McCune, a son of the payee and a distributee of his father's estate, became the owner of said note.

"That there remained due on said $840 note at the time Guy McCune became the owner thereof, the sum of $630. None of said respective payments made by Frances Peak exceeded the interest due at the time the payments respectively were made, and as it was the duty of the life tenant, Frances Peak, to pay such interest accruing after she became such life tenant, she

is not entitled to any contribution from the other heirs, or reimbursement therefor. That Frances Peak, either as a life tenant or as the owner of the junior incumbrance securing the $300 note, had the right to redeem the land from said $840 incumbrance. For the purpose of so doing she in the fall of 1905 procured the transfer and assignment of said $840 note to her by said Guy McCune and, as the owner and holder of the same, duly caused the deed of trust securing the same to be foreclosed; that in so doing she was represented by Judge R. L. Motley as her agent and attorney; that the date of said foreclosure sale was November 27, 1905, at which time, as averred and admitted in the petition, Frances Peak was the owner and holder of said $840 note. That the acquisition by said Frances Peak of said $840 note incumbrance did not, as between her and the owners of said remainder estate, cause any merger of said lien with her life estate.

"That the consideration of said assignment of said note of Frances Peak was the sum of $236.40 paid by her to said Guy McCune, who accepted said payment as the amount due on said note at the time of its said assignment, although there is much uncertainty in the evidence as to the amount actually then due. That before the foreclosure of said deed of trust securing said $840 note any or all of said remaindermen had the right to redeem from the same and upon so doing to enforce contribution from the life tenant, but such right was ended by the foreclosure as aforesaid.

"As stated before, the plaintiffs do not seek to redeem from a valid sale under a deed of trust to the assignee of the beneficiary under such deed, but repudiate the sale *in toto*, and ask that it be set aside on the ground of fraud charged to have been perpetrated against them by Frances Peak, and that upon the same being set aside, they then be permitted to

redeem. The remaindermen were not tenants in com-
mon with Frances Peak, the life tenant, and said life
tenant had a perfect right to buy the remainder estate
in said lands and in so doing acquired such interest,
provided the said trustee's sale was not fraudulent or
otherwise invalid. That the said acquisition of said
lands by said Frances Peak under said sale did not
enure to the benefit of said remaindermen to the extent
of their said interest as remaindermen. If we concede
that the plaintiff had the choice of either of two in-
consistent remedies, namely, either to recognize the
regularity of and validity of the trustee's sale as made
and proceed as assignee of the grantor, George W.
Peak, to redeem therefrom as provided by statute, or
to repudiate the sale for alleged fraud and ask to re-
deem from the incumbrance itself after having the
sale set aside, the plaintiffs have elected to pursue the
former equitable remedy; that at said sale one L. S.
Sisson bid in said lands at the price and sum of $971,
which said purchase price was by said Sisson duly
paid to and received by said trustee, who thereupon,
on December 27, 1905, made and executed to said
Sisson his the said trustee's deed conveying to said
Sisson the lands in controversy; and the said Sisson,
on the 28th day of December, 1905, by his quitclaim
deed of that date, and for the expressed consideration
therein of $971, released and conveyed said premises
to said Frances Peak; that said trustee's deed and
said quitclaim deed were duly filed for record in said
recorder's office on the 28th day of December, 1905;
that the recital in said trustee's deed of the receipt by
said trustee of said purchase price constituted prima-
facie evidence of such fact, and there is no evidence in
the case to the contrary; that the greater weight of the
evidence tends to show, and the court finds, that in
bidding in said lands and accepting a deed to the same
the said Sisson was acting for and as the agent of
Frances Peak and that the amount paid to said trustee

by said Sisson was in fact furnished by Frances Peak and that said Sisson bought with the knowledge of the rights and equities of the parties interested in said lands; that there is no evidence of any fraud on the part of Frances Peak as charged in the petition and the court finds such issue in favor of the defendants.

"The court further finds that said promissory note for $300 executed by George W. Peak to Frances Peak, as aforesaid, and secured by deed of trust as aforesaid, was neither paid off, discharged, delivered up, nor cancelled in the lifetime of said George W. Peak. There was no agreement between said George W. Peak and Frances Peak that said Frances Peak would discharge, cancel, or treat as paid off the said note and deed of trust if said George W. Peak would by his will devise all of the lands in controversy to said Frances Peak for and during her natural life; that the devise in said will of a life estate to said Frances was not made in consideration of any such agreement or any agreement; that there is some slight evidence tending to show that the disagreement between said George W. and Frances was over the payment of interest on the note; that at the time of such controversy there was a provision in the will of said George W., as then drawn, devising a life estate to said Frances, and that Geo. W. at one time threatened that if said Frances did not destroy or cancel the note, he would change the provisions of his will.

"All of the parties testifying to such agreement were directly interested in the result of this suit; their evidence full of contradictions, uncertain and vague, disclosing under cross-examination that statements, if any, made by Geo. W. and vital to the issue were not made to or in the presence or hearing of Frances Peak, nor was the agreement so testified to the same agreement pleaded in the petition, and the subsequent recognition by said heirs of Frances Peak's right to satisfaction of her note weakens their testi-

mony against her. Frances Peak, as a witness in the case, denied, as far as her competency as a witness permitted her to testify, the statements attributed to her by the adverse witness.

"The court further finds that the purchase price received by said trustee was applied by him in payment of the balance then due on said $840 note and in payment of the balance then due on said $300 note, leaving a surplus applicable to other purposes; that said Frances Peak, on the 28th day of November, 1905, executed a deed of trust in the nature of a mortgage conveying said lands to defendant J. D. Layne to secure to defendant Lem T. Patterson the sum of $312 expressed in a promissory note in said deed described; that each of said two last named parties had constructive notice of the title to said lands as held by the said widow at the date of the said last mentioned deed of trust and at the date of said trustee's sale; that subject to the provisions of said last mentioned deed of trust the defendant, Frances Peak, is the owner in fee simple of all of the above described real estate and it is so adjudged and decreed by the court.

"And it is further ordered, adjudged and decreed by the court that the plaintiffs are not entitled to the equitable relief prayed in the petition, nor has the defendant, Frances Peak, shown herself entitled to any affirmative equitable relief as prayed in her answer.

"And it is further adjudged and decreed by the court that the plaintiffs take nothing by their writ and that the defendants go hence without day and have and recover of plaintiffs their costs herein incurred or expended and have execution therefor."

After moving unsuccessfully for a new trial, the plaintiffs appealed the cause to this court.

I. After carefully reading all the evidence introduced at the trial of this cause, we are satisfied that the learned trial court correctly found the facts to be as above stated, except we are of the opinion that the

sale of the land in question under the $840 note and deed of trust, at the instance and request of Frances Peak, the life tenant and owner of the note, was a fraud upon the rights of the remaindermen, the children and devisees of George W. Peak, her deceased husband.

This question has been before this court frequently, and the uniform ruling has been that the purchase of land at a foreclosure sale under a mortgage or deed of trust by a life tenant will be deemed to have been made for the benefit of the remaindermen if they contribute their portion of the purchase money within a reasonable time. [Cockrill v. Hutchinson, 135 Mo. 67; Stitt v. Stitt, 205 Mo. 155; Rutter v. Carothers, 223 Mo. 631; Hinters v. Hinters, 114 Mo. 26; Allen v. DeGroodt, 105 Mo. 442; Same v. Same, 98 Mo. 159.]

Some of the foregoing cases were between co-tenants; and even in such cases this court has uniformly held that one co-tenant cannot legally buy in an outstanding title or encumbrance, and thereby defeat the rights of another co-tenant. For stronger reasons the same rule should and does apply between the life tenant and remaindermen, because the former not only bears the confidential relation to the latter that one co-tenant bears to another, but also has the exclusive possession, care, control and enjoyment of the entire estate, which in a large measure excludes the remainderman from protecting his own rights and interest in and to the land; whereas in a case between co-tenants all of them stand upon an equal footing.

We are, therefore, of the opinion that the trial court erred in holding that Frances Peak, in good faith and without fraud, purchased the land in controversy at the sale under the deed of trust. In violation of her legal duty she had the land sold for the sole purpose of defeating the remaindermen, and to thereby acquire the absolute title to the property.

II. The next proposition presented for determination is, what is plaintiffs' remedy in the premises?

This identical question came before this court in the case of Stitt v. Stitt, supra. In that case the husband died, leaving one hundred and twenty acres of land. By will he gave eighty of it to his wife for life and in which she had a homestead. The other forty acres were encumbered with a mortgage for five hundred dollars, and as to that forty he died intestate, leaving other debts, amounting to seven or eight hundred dollars, with no personal estate. She was the executrix under the will, and obtained an order from the probate court to sell this forty, and was offered fourteen hundred dollars therefor, which she refused and asked sixteen hundred, but made no real effort to sell it. When the mortgage became due she had it foreclosed in order that she might become the purchaser of the land (as was done in the case at bar) and at the sale she bought the land for five hundred and fifty dollars. In passing upon the right of the plaintiffs in that case to redeem from the foreclosure sale, this court, in speaking through Judge LAMM, said:

"In so far as the decree subrogated defendant to the rights of Knowles under the deed of trust, no fault can be found with it. They who seek equity must do equity. Decedent was seized of tract C, subject to that encumbrance. His estate, therefore, may only retake the title *cum onere*. Thereby it is made to stand in its cast-off, former shoes, which is well enough. Equity does nothing grudgingly or by halves. Its outstretched arm corrects, but with loving kindness withal. Hence to the extent the widow lifted the burden of that incumbrance from the estate by her bid, to that extent she should be made whole. The rule of substitution is one of pure benevolence, and the facts and circumstances of this case afford a typical opportunity for the application of that rule.

"Defendant seeks to bring herself within the doctrine of those cases in which an administrator, owing no duty and having no power to protect the interests of creditors and heirs in the real estate of a decedent and dealing at arm's length with all concerned, buys at an execution or foreclosure sale. Dillinger v. Kelley, 84 Mo. 561, is a sample of such cases; but that case and no well-considered case, carefully read, promulgates any rule inimical to this decree. Here the defendant was a trustee in the most exacting sense; for she had power and she had duty and had assumed the role of using the power in performance of that duty. Not only was she armed under the order of sale with power to do that duty, but in this instance ability to perform lay at her door, ready to her hand. Not only so, but she was placed in a most delicate and anxious position—a position watched by a chancellor with a solicitous eye, to be weighed and considered with a piercing and distinguishing judgment; because duty and power of performance were set over against self-interest. She set one in one eye and the other in the other. The love of money is the root of all evil; and when one is bound in a confidential relation it is of the very essence of things to see to it that the strident and clamorous voice of self-interest does not drown out the still, small voice of duty and conscience.

" 'No one,' says WILLIAMS, J., in Tuggles v. Callison, 143 Mo. l. c. 536, 'will be permitted to purchase and hold property as his own, where he has a duty to perform in relation thereto inconsistent with his position as a purchaser on his own account, and so the cases all hold.' Such purchase becomes of a poisonous character. The temptation existing, the correlative duty to remove it exists. In the case at bar the executrix could have sold tract C under the court's order for enough to have paid the mortgage debt, together with all the debts at large of the estate and the cost of administration. With one hand she put away from her

this duty, with the other she clutched the gain of violating that duty. Defended by the bulwark of a homestead claim to the residue of the real estate, she left the heirs and creditors to help themselves as best they may, with tract C cancelled as a debt-paying factor.

"Under the facts uncovered the trustee's sale was conceived and consummated by her for purposes single to herself. To that end she dallied and coquetted with the situation as executrix under the court's order of sale until such time as the evil seed she planted and watered could grow to flower and fruitage in' the trustee's deed, thereby doing what she set out to do, *viz.*, appropriate to herself the only debt-paying asset available and making it impossible for her to render a just account of her stewardship. It is needless to cite authority to sustain the self-evident proposition that equity will grant relief by taking away from her a title tainted in that way. That was what the chancellor did below, and what he did meets our approval."

The facts in that case did not make out as strong a case as do the facts in the case at bar, for the reason that the sale there made did not involve the land in which the defendant owned the life estate, while in the case at bar, as before stated, the defendant Peak had the land, in which she owned the life estate, sold under the deed of trust in order that she might become the purchaser thereof, and thereby cut off the remaindermen, who were not in so favorable a position to protect themselves as were the heirs and creditors of Stitt.

So, under this view of the case, the trial court should have ascertained the balances due her, defendant Peak, on the $840 and $300 notes mentioned in the finding of the court, and the amounts each of the appellants should be required to pay her in order to redeem their interests in said lands, and should also have fixed a reasonable time in which they might redeem.

The court should also have charged the $312 note, payable to Lem T. Patterson, and the deed of trust securing the same against the interest of said Frances Peak in and to said land and not against the interest of appellants.

III. It is finally insisted by counsel for respondent that the bill states no equity, because appellants did not tender to the respondent the amounts due by each of them on said notes.

This insistence is untenable, for the reason that in equity the rule is, if the bill contains a general offer to do equity in conformity to the decree of the chancellor, that will suffice without making an actual tender.

This question has been so recently before this court and so ably discussed by our learned associate, Judge LAMM, in the case of Haydon v. Railroad, 222 Mo. l. c. 134, we deem it unnecessary to say more upon that subject than merely to quote his observations in that regard, which are as follows:

"It is argued the bill is obnoxious to the cardinal equity maxim that he who seeks equity must do equity; that it makes no offer to put defendant *in statu quo ante,* in that no tender or offer is made to return the $600 and costs paid under the compromise, but that the only offer is to credit that sum upon an unliquidated amount of damages, guessed off at $1500. Changes are rung in defendant's brief on the foregoing contentions, but the pith of it all is as put by us.

"Can the demurrer to the introduction of evidence stand on such fact? If the case were at law, the contention would be sound beyond question; but it is in equity and the better doctrine seems to be that under a bill (good otherwise) containing a general offer to do equity the chancellor, as the price of his decree, may let conscience have full play in doing her perfect work in disentangling the relations of the parties, and in

placing them where they were before as nigh as may
be. Such is the doctrine of Whelan v. Reilly, 61 Mo.
l. c. 569, *et seq.* and cases cited. That case was fol-
lowed in Clark v. Drake, 63 Mo. l. c. 360. In Kline
v. Vogel, 90 Mo. 239, the doctrine of the Whelan case
was somewhat shaken. But in a later case, Paquin v.
Milliken, 163 Mo. 79, the question was again up, our
decisions were marshalled, distinguished and applied.
The reasoning of the Whelan case was greatly corrob-
orated and fortified by the exhaustive consideration
given in the Paquin case, and the doctrine needs no
new exposition.

"In leaving the matter we may refer to Shuee v.
Shuee, 100 Ind. l. c. 481. In that case it was said: 'It
is urged that the court below should have sustained
a demurrer to the bill, because it failed to show an
offer to rescind on the part of the plaintiff before fil-
ing the bill, and it is argued that because it appears
from the facts as found by the court, that no offer to
rescind was made, nor to return the money paid as
the consideration of the settlement, before the suit was
commenced, the court should make no decree in plain-
tiff's favor setting aside the settlement. It is always
within the power of a court of equity, where its decree
is invoked, to require, as "the price of its decree," that
the person invoking it shall submit to equitable terms,
and accordingly a chancellor always inquires concern-
ing the equities which the plaintiff must do, in order
that he may be entitled to the relief which he seeks.
Whenever any benefit has been received under a con-
tract which the court is asked to set aside, the court
will fasten a trust on the conscience of the party, in re-
spect of such receipts, and direct an account and repay-
ment.'

"Such, too, was the conclusion reached by all the
judges in Haydon v. Railroad, 117 Mo. App. supra, l. c.
90 to 94 inclusive."

We are, therefore, of the opinion that the judgment should be reversed and the cause remanded; and it is so ordered. All concur.