DORA OWEN ET AL., Plaintiffs in Error, v. ALBERT LONG ET AL., Defendants in Error.—104 S. W. (2d) 365.

Division Two, April 21, 1937.

*Irwin & Bushman, Harry L. Buchanan* and *J. Ellis Walker* for plaintiffs in error.

*A. B. Holmes* and *Harry Clymer* for defendants in error.

COOLEY, C.—This is an action to ascertain and determine title to 210 acres of land in Phelps County, the plaintiffs in error claiming to own interests therein as remaindermen under the will of W. L. Earls. It was tried to the court as an action in equity, the court finding and rendering judgment for the defendants below. The plaintiffs below appealed and later dismissed their appeal and sued out this writ of error. Since the writ of error was sued out certain of the original parties have died and their heirs or representatives have been substituted here. No point being made that all proper parties are not before the court we shall assume such to be the case, and for convenience shall refer to plaintiffs in error as plaintiffs and to defendants in error as defendants, as the parties were originally styled below.

The land in question was owned in his lifetime by W. L. Earls, he being the common source of title. On September 3, 1902, he borrowed of A. S. Long $1500, giving his note therefor, due in two years, and on December 22, 1903, he borrowed of Long $200, giving his note

due in one year. In each instance he and his wife, Lucretia, executed a deed of trust on the lands in question to secure the loan. Lucretia did not sign those two notes. A. S. Long died owning those notes and they passed to his surviving son, Edwin Long. On about November 16, 1916, W. L. Earls borrowed of Edwin Long $1190. His wife, Lucretia, signed that note and, to secure it, Earls and wife gave Long a deed of trust intended and then understood by all parties to convey the land in question, but by mistake misdescribing part of it. Certain payments were made by Earls from time to time so that when he died, about July 28, 1919, all three notes were live obligations and charges upon his real estate. He left a will by which he gave his surviving wife, Lucretia, a life estate in said realty, making her also executrix, and, subject to certain conditions as among themselves not necessary here to state, devised the remainder to children and grandchildren, who constituted all of his heirs. These remaindermen are the plaintiffs in this action, claiming through the will, which was duly probated. It is not shown, however, to have been recorded in the recorder's office, as provided by Section 548, Revised Statutes 1929 (Mo. Stat. Ann., p. 337).

Shortly after her husband's death Lucretia Earls received $2000 life insurance money. That belonged to her. She paid it to Edwin Long on the indebtedness owing him, represented by the notes above mentioned. It does not appear that she directed it to be applied on any particular note but she took from Long a receipt reciting that it was "to apply on indebtedness of W. L. Earls, deceased." That payment was not endorsed on either of the three notes, all of which were then held by Edwin Long, but was taken into account when, later, as will be presently mentioned, the amount due on the three notes was calculated. Mrs. Earls knew of the $1500 and $200 notes, though she had not signed them. It may be stated here that none of the three notes was presented or allowed as a demand against the estate of W. L. Earls in the probate court, the holder evidently relying upon his security.

In the early part of 1926 a Mr. Dixon, representing Mrs. Earls, and a Mr. McGregor, acting for Long, computed the amount due on the three notes, giving credit for payments endorsed on the notes and for the $2000 payment made by Mrs. Earls, as of its date. According to McGregor's figures there was due a net total balance of $3,307.18 as of April 4, 1926. Dixon's calculation showed a little more. The result of this calculation was reported to Mrs. Earls and, as we understand the record, to her son-in-law, Mr. Owen, husband of plaintiff Dora Owen. No complaint was made. About that time or perhaps a little later it was discovered that the deed of trust securing the $1190 note did not correctly describe the land intended to be conveyed. About February, 1927, Edwin Long, payee and holder of that note,

brought suit to reform and to foreclose the deed of trust, making Lucretia Earls and all of the heirs and devisees of W. L. Earls parties defendant. All were duly served with process or notified. The court gave judgment reforming the deed of trust, ascertaining and adjudging the amount secured thereby on the $1190 note to be $2059.61, foreclosing the deed of trust as reformed and the equity of redemption of the defendants in said action, and ordering the land sold to pay the secured debt. That judgment was rendered in April, 1927. There was no appeal. Execution was duly issued and levied on the land and in September, 1927, the land was duly sold by the sheriff, Lucretia Earls being the successful bidder and receiving a sheriff's deed conveying the land to her. The foreclosure proceedings appear regular on the face thereof. It is not contended otherwise.

Immediately after receiving the sheriff's deed conveying the land to her Lucretia Earls gave Edwin Long her note for $3790.70 and executed a deed of trust on the land to secure same. That sum represented the amount which had been calculated to be due on the entire indebtedness of the W. L. Earls estate, that is on all three of the above-mentioned notes, with the interest which had accrued since the date of calculation, April 4, 1926. Mrs. Earls bid $500 at the foreclosure sale, but did not actually pay the bid in cash. It had been understood and agreed between her and Long prior to the sale that if she became the purchaser she would give him the new note and deed of trust and the $500 was included therein instead of being paid in cash. The $1500 and $200 notes were thereupon canceled and surrendered to Mrs. Earls and the deeds of trust securing them were released of record. The $2000 was surrendered to Mrs. Earls and considered paid.

After the execution of said $3790.70 note and deed of trust by Mrs. Earls to Edwin Long the latter died and the note passed into the hands of his heirs. Mrs. Earls, on December 7, 1928, paid the interest up to October 28, 1928. No further payments were made. The note was past due, being payable on or before one year from its date. It is not clear whether or not there was an administration on the Edwin Long estate. Mr. A. B. Holmes, an attorney, who appears to have been looking after the Long family's legal affairs, testified that the "Long boys," A. E. Long and Luman Long, conferred with him in January or February, 1930, about the interest being in default and asked him to see Mrs. Earls, which he did. She could not pay anything but thought she might be able to pay the interest if given another year's time. The additional time was granted. In January, 1931, he had another conference with Mrs. Earls, as to which he testified:

"I told her that there was more than two years' interest due on the note, and that it was then up to around forty-four or forty-five

hundred dollars, and that the boys felt that it was getting beyond the value of the farm, and that there were two years' taxes past due, and that something would have to be done or that they would have to foreclose. She told me to give her some two or three days and she would come back and see me. And she came back in a few days, and we discussed the proposition about the foreclosure of a deed of trust, and she said that rather than have the foreclosure that she would execute a deed. And I told her that if she executed a deed, that we would cancel the note so she would be released in full. And she at that time, I believe, or within a day or two after that, executed a deed to A. E. Long to the land. And I satisfied, had the note endorsed by Mrs. Long and satisfied the record of the deed of trust and delivered her note over to her."

Pursuant to the agreement testified by Mr. Holmes, Mrs. Earls conveyed the land to A. E. Long by general warranty deed dated February 3, 1931, the deed of trust was released of record and the note was canceled and surrendered to Mrs. Earls.

By general warranty deed dated February 13, 1931, A. E. Long and wife conveyed a part of said lands to defendant G. H. Gaddy and by similar deed of the same date conveyed the remainder of the land to defendant F. E. Asher. The evidence indicates that each of said purchasers paid full value for the land conveyed to him, the consideration in each case being $2000. Each paid part cash and gave a note for the balance payable to "Mrs. Daysie Long" and secured by deed of trust on the land purchased by him. Each took possession under his deed and thereafter made valuable improvements on the land so bought, claiming the full title in fee subject to the deed of trust in favor of Mrs. Daysie Long, who asserts like claim. At the time this suit was tried Gaddy and Asher were so in possession.

Plaintiffs by their pleadings assert, among other matters, that the $1190 note had been "paid off and discharged by Lucretia Earls out of the estate of W. L. Earls" prior to the foreclosure suit but "through the neglect of the defendant Long the same was not released of record," and they also allege that Edwin Long brought the foreclosure suit for the fraudulent purpose of cheating these plaintiffs, as remaindermen, out of their interests in the land.

As to the question of fraud, we find in the record no sufficient evidence to warrant a finding that the foreclosure judgment was procured by fraud, even were this a direct proceeding to set aside that judgment as for fraud in its procurement, which it is not. It is a collateral attack on that judgment, insofar as it attacks the judgment at all. Plaintiffs do not ask to have that judgment set aside. They seem to recognize its validity, except, perhaps, as to the amount found by the court to be due on the $1190 note, as will more fully appear hereafter. They seek to go behind the judgment, without at-

tempting to have it set aside, and to dispute facts therein adjudicated. That a judgment cannot be thus collaterally attacked in a subsequent proceeding by persons who were parties thereto, where, as here, the court rendering the judgment had jurisdiction of the subject matter and of the parties, we think is too well settled to require citation of authorities. For these reasons we refrain from setting out or discussing the evidence offered for the purpose of showing fraud in procurement of the foreclosure judgment.

As to payment:—There was but one credit, $225, endorsed on the $1190 note. Plaintiffs say the $2000 paid to Edwin Long by Lucretia Earls out of her insurance money should have been treated as paid on that note, even though she did not so direct, because it was the only one of the three notes of W. L. Earls which she had signed, and that, if so applied it was sufficient to have discharged that note. The court, in its finding and judgment in the foreclosure suit, did not make a specific finding as to what payments had been made on the $1190 note, but did find and adjudge the amount then due thereon and secured by the deed of trust as reformed. By calculating the interest on that note, which is set out in the record now before us, and giving credit for the $225 payment endorsed thereon, it appears that the court, in the foreclosure suit, did not allow credit on the $1190 note for said $2000 payment. It must have been treated as having been applied on the $1500 and $200 notes. Be that as it may the question of alleged prior payment of said $1190 note is clearly *res adjudicata*, which defense is pleaded herein. The petition in the foreclosure suit sought reformation and foreclosure of the deed of trust, adjudication of the amount secured thereby and sale of the land to pay such debt, all of which was adjudged. Plaintiffs herein, as well as the life tenant, Lucretia Earls, were parties defendant in the foreclosure suit. The court had jurisdiction of the subject matter of the action and of all parties thereto. There was no appeal from the judgment, which has become final. If the $1190 note had previously been paid that fact would have been a defense in the foreclosure suit and could and should have been there presented.

Plaintiffs contend that when Lucretia Earls bought at the foreclosure sale she took and held the title as trustee for herself and for the remaindermen, she owning the life estate and plaintiffs the remainder, as they originally owned under the will of W. L. Earls; that she did not own and could not mortgage or convey the remainder, wherefore her deed to A. E. Long and his deeds to Gaddy and Asher had the effect only of conveying her life estate. By their answers herein the defendants, among other matters pleaded, asserted the validity and conclusive effect of the foreclosure proceedings and that Lucretia Earls, by her purchase and the sheriff's deed made to her, became the absolute owner of the lands in question and that she con-

veyed full title to A. E. Long, who conveyed to defendants Gaddy and Asher. Gaddy and Asher also pleaded that they bought in good faith, for value and without notice of any infirmity in their *grantor's* title or of any claim on the part of plaintiffs of an interest in the lands. Plaintiffs' pleadings do not appear to controvert the allegation made in the answers of Gaddy and Asher to the effect that they bought as innocent purchasers, as above indicated. That question is not mentioned in the petition. It was presented by the answers of Gaddy and Asher, whereby they asserted full title in themselves, respectively, subject to their respective deeds of trust to Daysie Long. In their reply the plaintiffs pleaded at length matters in relation to the $1500 and $200 notes having been paid prior to the payment of the $2000 by Lucretia Earls in 1919; that they were then barred by Statutes of Limitation, etc.; that the $1190 note had been paid prior to the foreclosure suit and that said suit had been brought for the purpose of defrauding plaintiffs, as we have above indicated; and then stated:

"Plaintiffs therefore deny that F. E. Asher and G. H. Gaddy are now the respective owners in fee subject to any incumbrance between them and the other defendants for the reason that the other defendants as grantees of Lucretia Earls only and as grantors of the defendants F. E. Asher and G. H. Gaddy, had no fee to convey to them."

We find in plaintiffs' pleadings no denial of the facts alleged in the answers of Gaddy and Asher to the effect that they bought for value as innocent purchasers, without notice of any interest or claim of plaintiffs. It seems to be conceded that if they did so purchase they have good title, hence we need not discuss that question or cite authorities on that proposition. The foreclosure proceedings, as we have said, appear regular on their face. The judgment therein foreclosed the deed of trust as reformed and the equity of redemption and ordered *the land*—not merely the life estate but *all interests,*—sold to satisfy the debt adjudged to be due. Execution was duly issued and levied, pursuant to the judgment, on the land and all interests therein of all the parties, and public sale was made accordingly, at which anyone was privileged and invited to bid. The sheriff's deed purported to convey to Lucretia Earls full and complete title, in accordance with the judgment, execution and levy. In short, said deed, on its face, conveyed to Lucretia Earls the full and complete title to the lands in question. Certainly, in such situation, as against persons who were parties to the suit in which such judgment was rendered and in accordance with which the sale was made, subsequent purchasers would have a right to assume, absent knowledge or notice to the contrary, that the sheriff's deed conveyed what it purported to convey.

There is no contention nor was there any evidence that Gaddy or

Asher had actual knowledge or notice that plaintiffs claimed any interest in the lands when they bought from A. E. Long. Indeed it does not appear that any of the plaintiffs, after the foreclosure, ever asserted such claim or made any objection to anything done by Lucretia Earls in connection with the handling of her husband's estate as executrix, or in the foreclosure proceeding and her purchase and subsequent conveyances, until they instituted this suit in February, 1932, some four and a half years after she bought at the foreclosure sale and gave her $3790.70 note and deed of trust to Edwin Long, and a year after defendants Gaddy and Asher bought the land. Gaddy and Asher asserted in their pleading and testified that they bought in good faith and without notice. Their pleading, on that point, is not denied by plaintiffs' pleading. Plaintiffs now urge here that the will of W. L. Earls, which, with its probate, was of record in the probate court, gave Gaddy and Asher constructive notice and put them upon inquiry which, if followed up, would have apprised them of plaintiffs' claims. They invoke what is said in Witcher et al. v. Hanley et al., 299 Mo. 696, 701, 253 S. W. 1002, 1003 (2-3), to be the general rule that "the purchase by the life tenant at a sale under a deed of trust on the property is 'deemed to have been made for the benefit of the remaindermen if they contribute their portion of the purchase money in a reasonable time.'" In that case one Ephraim Witcher owned the land and, with his wife, Mattie, executed a deed of trust on the property. By his will he gave his said wife a life estate in the land, remainder to his children. After his death, sale was made under the deed of trust (as we understand from the opinion by the trustee therein named), and said Mattie became the purchaser. Later she purchased the interests of three of the remaindermen. We assume she received deeds from them, though the opinion does not specifically so state. Thereafter, claiming to own the land in fee, she brought suit to quiet title against the other remaindermen. They were nonresidents and it did not appear that actual notice of that suit reached them. They defaulted and judgment went for said plaintiff. Within the time allowed by law they filed a bill asking for review of the judgment rendered in said suit to quiet title. The circuit court dismissed their bill and the appeal in Witcher v. Hanley, supra, was from the latter judgment. It appears that immediately after the decree was rendered in the title suit, and evidently before the bill to review that decree was filed, one Tennessee Sellers bought the land from Mrs. Witcher. This court said in its opinion that it was charged in the bill to review that Mrs. Witcher had procured the trustee in the deed of trust to make the trustee's sale for the purpose and with intent of excluding the remaindermen whose interests she had not bought, and that there was evidence pro and con upon that issue; that it was also charged that said purchaser had

548

actual notice of all the facts, and that there was evidence tending to prove such to be true. After discussing those and other facts in the case and the legal principles involved the court concludes its opinion thus:

"The respondent, who purchased from Mrs. Witcher immediately after the decree was rendered in the suit to quiet title, bought with knowledge. The will, deed, and decree through which she was compelled to deraign title constituted notice. [Picot v. Page, 26 Mo. l. c. 415.] In addition, the evidence preponderates that she was in fact told of the probable claim of the heirs. The law advised her of appellants' right to file the bill of review, and she bought subject to that right. Whether she is entitled to a lien upon the land for the amount she paid to discharge the incumbrance, and entitled to a cancellation of the $1,000 note still outstanding, are questions which are not presented by the present record."

The decree in the Witcher case is not set out or epitomized in the opinion, nor is the petition therein. The petition (part of the record proper in the circuit court) must have shown that the plaintiff therein, Mrs. Witcher, had purchased the interests of some of the remaindermen after the trustee's sale and deed to her and that the other remaindermen, defendants in the suit to quiet title, claimed an interest in the land. Doubtless the decree indicated as much. The decree was in the respondent's chain of title. We think it should have at least put the respondent, purchaser, upon inquiry as to the issues presented by the petition and adjudged by the decree, and no doubt this court so considered. At the time of the purchase by the respondent the decree had not become conclusive, because "The law advised her (respondent in that case) of appellants' right to file the bill of review, and she bought subject to that right."

In the instant case Lucretia Earls did not procure or suggest the foreclosure, nor is there any contention or any evidence tending to show that she at any time entertained a thought or purpose of cutting out the remaindermen or of benefiting herself to their detriment. The foreclosure suit was brought by Edwin Long, holder of the $1190 note, on his own initiative and, we are persuaded from the evidence, with no fraudulent purpose or intent. All of the remaindermen (plaintiffs in the instant action) were made parties defendant in the foreclosure suit. The court adjudged foreclosure of the deed of trust and the equity of redemption of all the parties, and sale of the land, —all interests therein of all parties to the suit,—for payment of the secured debt. Levy of execution and public sale thereunder, pursuant to the judgment, were duly made and a sheriff's deed was duly executed, purporting to convey to Lucretia Earls all title and interests of all of the defendants in the foreclosure suit. As we have said, all

of these proceedings in the foreclosure suit, including.the sheriff's deed, appear regular upon their face.

Now, assuming for the purpose of the case, that the probate court record gave Gaddy and Asher constructive notice of the will of W. L. Earls and its provisions (See Nichols et al. v. Hobbs et al. (Mo), 197 S. W. 258), was that alone sufficient to constitute notice to said subsequent purchasers that the remaindermen still claimed an interest in the land after the foreclosure suit and the sheriff's. deed made pursuant thereto? We think not. The will would notify them that, under it, Lucretia Earls was life tenant and that these plaintiffs took certain interests in remainder. But all interests were subject to the deed of trust, and were foreclosed in the subsequent foreclosure proceedings. We do not understand it to be the law that a life tenant may not in any circumstances, in good faith bid for himself and acquire complete title at a judicial sale, made pursuant to a judgment of a court.of competent jurisdiction, wherein all interested persons, including the remaindermen, were parties and could have asserted their claims, and wherein the judgment ordered sale of the interests of all parties to the action. If such were the law it might, in many cases, result to the prejudice of all parties interested. In Becker v. Becker, 254 Mo. 668, 163 S. W. 865, it was held that a tenant in common, who, as to outstanding incumbrances, sustains toward his cotenants a trust relation somewhat similar to, if, perhaps, not altogether coextensive with, that of a life tenant toward remaindermen, may, if acting in good faith, buy in for himself the common property at a public sale under a paramount deed of trust. See, also, Dudgeon et al. v. Hackley et al. (Mo. en banc), 182 S. W. 1004, wherein the life tenant bought in the property for himself at a judicial sale made pursuant to judgment in a proceeding to which all persons interested were parties and his right so to do was affirmed.

We think Witcher v. Handley, supra, is distinguishable from the instant case, as are also Peak v. Peak, 228 Mo. 536, 128 S. W. 981, Allen v. De Groodt, 98 Mo. 159, 11 S. W. 240, and like cases, cited by appellants.

In 66 Corpus Juris, page 1003, section 1103, we read: "One who acquires title by judicial decree is entitled to protection as a bona fide purchaser. So one who has purchased land under a judgment of a court of competent jurisdiction, in good faith and without notice of any irregularity in the service of process, is entitled to protection."

Under the facts shown by the record before us we are of the opinion that Gaddy and Asher, having no actual notice of any claim on the part of plaintiffs, were not bound by the mere constructive notice given them by the will to go behind the foreclosure judgment and sale, which on their face foreclosed all interests, and to look or inquire for possible adverse claims not disclosed or reasonably indi-

cated by the records. We think that in the circumstances shown they are to be regarded as innocent purchasers. Having reached this conclusion it is unnecessary to discuss other matters urged in briefs of counsel. The judgment is affirmed. *Westhues* and *Bohling,. CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.